**United States Court of Appeals
for the Eleventh Circuit**

———————◆———————

**Sheryl Glover and Cathy Booze,**
*Appellees,*
v.
**Ocwen Loan Servicing, LLC,**
*Appellant.*

———————◆———————

**On Appeal from the United States District Court for the Southern District of
Florida, Nos. 9:20-cv-80053-DMM & 9:20-cv-80135-DMM**

———————◆———————

**BRIEF OF APPELLANT
OCWEN LOAN SERVICING, LLC**

———————◆———————

Michael R. Pennington
BRADLEY ARANT BOULT CUMMINGS LLP
1819 5th Avenue North
Birmingham, Alabama 35203
(205) 521-8391
mpennington@bradley.com

Scott Burnett Smith
BRADLEY ARANT BOULT CUMMINGS LLP
200 Clinton Avenue West, Suite 900
Huntsville, Alabama 35801
(256) 517-5198
ssmith@bradley.com

Kimberly M. Ingram-Hogan
BRADLEY ARANT BOULT CUMMINGS LLP
1221 Broadway, Suite 2400
Nashville, TN 37203
(615) 252-3592
kingram@bradley.com

**Counsel for Appellant Ocwen Loan Servicing, LLC**

## CERTIFICATE OF INTERESTED PERSONS
### AND CORPORATE DISCLOSURE STATEMENT

Appellant PHH Mortgage Corporation, as successor by merger to named Appellant Ocwen Loan Servicing, LLC (together, "Appellant"), pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1, identifies below all trial judges, attorneys, persons, associations of persons, firms, partnerships, corporations, and other legal entities that have an interest in the outcome of this case, including subsidiaries, conglomerates, affiliates and parent corporations, any publicly held company that owns 10 percent or more of a party's stock, and other identifiable legal entities related to a party.

Andreu, Timothy A., Attorney for Appellee

Bailey & Glasser, LLP, Counsel for Appellee

Booze, Cathy, Appellee

Bradley Arant Boult Cummings LLP, Counsel for Appellant

Consumer Law Attorneys, Counsel for Appellee

Evans, Diana N., Attorney for Appellant

Glover, Sheryl, Appellee

Ingram-Hogan, Kimberly M., Attorney for Appellant

Kauffman, James Lawrence, Attorney for Appellee

Kim, Young, Attorney for Appellee

Korte and Wortman P.A., Counsel for Appellee

Middlebrooks, The Honorable Donald M., United States District Judge for the Southern District of Florida

Moore, Jamie L., Attorney for Appellant

Ocwen Financial Corporation, which is publicly traded on the New York Stock Exchange (OCN) and which is the parent corporation of PHH Corporation

Ocwen Loan Servicing, LLC, Appellant, which no longer exists as a standalone entity

Pennington, Michael R., Attorney for Appellant

PHH Corporation, which is privately held and the parent corporation of PHH Mortgage Corporation

PHH Mortgage Corporation, successor by merger to named Appellant Ocwen Loan Servicing, LLC

Smith, Scott Burnett, Attorney for Appellant

## STATEMENT REGARDING ORAL ARGUMENT

This statutory financial services case presents a pure legal question under the Fair Debt Collection Practices Act in the mortgage servicing context. The facts are not disputed. Ocwen is a mortgage servicer to lenders, a third party who collects monthly mortgage payments owed by borrowers. The borrowers here are Plaintiff Cathy Booze and Plaintiff Sheryl Glover. Their lenders are HomeAmerican Credit Inc. and New Century Mortgage Corporation.

Booze and Glover each brought an action claiming that Ocwen's convenience fees violate the FDCPA. Ocwen charges convenience fees as consideration for an extra optional service Ocwen is not required to offer: accepting electronic payments made via telephone or online, and posting them to the borrower's account that same day. Plaintiffs' notes and mortgage agreements do not require Ocwen to offer these services. Neither does any law. And no borrower is ever required to incur these fees to pay his or her mortgage, because mortgage payments can always be made by mailing a check or money order without incurring a fee.

But borrowers value this optional service. They often use these optional expedited payment services when they are approaching a critical payment deadline and want to avoid the higher costs associated with late fees, adverse credit reporting,

default, or foreclosure. And every time a borrower requests expedited payment by phone or online, Ocwen first explains the associated fee for using the optional payment method and obtains the borrower's express agreement to the fee before accepting the payment online or by phone and charging the associated fee.

Convenience fees are not unique to the mortgage servicing industry. Banks charge convenience fees in a variety of circumstances. Apart from private industry, federal and state government entities also charge convenience fees for expedited electronic payments for licenses, taxes, and the like. If Ocwen did not choose to offer this optional extra service, a borrower at the eve of a late-fee deadline would have to make their own arrangements for expedited payment, such as incurring charges for an overnight FedEx, wiring payment through a bank or Western Union, employing a carrier service, or making other arrangements for hand delivery of their payment. All of these services involve fees. This case involves a simple question: If the mortgage servicer offers an extra expedited payment service that it is not required to offer at all, and does so in exchange for a contemporaneously disclosed and agreed-upon fee, does that violate the FDCPA?

The FDCPA says a "debt collector may not use unfair or unconscionable means to collect . . . any debt" and specifically proscribes the "collection of any

amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). The District Court held that the FDCPA barred Ocwen from collecting convenience fees because they were "incidental" to the mortgage loan and not permitted by law. *Glover*, R-20 & R-82 (*Glover v. Ocwen Loan Servicing, LLC*, No. 20-80053-CV); *Booze*, R-12 & R-72 (*Booze v. Ocwen Loan Servicing, LLC*, No. 20-80135-CV (S.D. Fla.)).[1]

The FDCPA's plain language justifies reversal of the District Court. Mortgage servicers are not required to offer expedited payment services at all, so fees for those extra optional services logically are neither collection of the debt nor "incidental" thereto. First, charging a separate fee for the separate service of accepting expedited payment over the telephone or internet is not "collection" of any debt already owed. Rather, it's a distinct and new agreement (with offer, acceptance, and consideration) between the borrower and servicer for a new service that the note and mortgage (or security deed) do not require the servicer to offer at all, just like voluntarily paying

---

[1] Citations to the record herein appear in the following form: "R-__(__)-__." The first blank refers to the ECF docket number, the second to any subdocument number assigned by the Pacer system, and the third to the ECF-generated page number in the header. The applicable docket is indicated by "*Glover*" or "*Booze*" before the record citation.

extra for home delivery as opposed to store pickup. Setting a price for such a service is not debt "collection" because the service is completely optional and is separate from any service required by the underlying debt instruments. Moreover, the fee is not part of the debt. The extra service is offered by the servicer, not the lender, and the fee for it is likewise paid directly to the servicer, not to the lender. And because the borrower voluntarily agrees to use the separate service for that price after full disclosure of the fee, it is permitted by ordinary contract law.

These straightforward applications of the statutory language ordinarily would not require oral argument. However, Ocwen acknowledges that some district courts within (and beyond) this Circuit have reached differing conclusions over whether convenience fees violate the FDCPA, and the Fourth Circuit has interpreted the FDCPA to prohibit such fees. In light of this intra-Circuit split and a potential inter-Circuit split, Ocwen requests oral argument.

TABLE OF CONTENTS

Certificate of Interested Persons and Corporate Disclosure Statement ................C-1

Statement Regarding Oral Argument ........................................................................ i

Table of Citations ................................................................................................... vii

Statement of the Issues ............................................................................................. 1

Statement of the Case ............................................................................................... 3

     A.     Statement of facts. ....................................................................... 3

          1.     Glover's and Booze's mortgages. ............................... 3

          2.     Glover's and Booze's convenience fee payments. .................... 4

     B.     Course of proceedings. ............................................................... 8

     C.     Standard of review ..................................................................... 10

Summary of the Argument ....................................................................................... 11

Argument ................................................................................................................. 14

I.     Ocwen's convenience fees do not violate the FDCPA because they are neither a debt nor incidental to a debt. ........................................................ 14

     A.     The FDCPA prohibits collection of "amounts" that are debts or incidental to debts. ................................................................. 14

     B.     A convenience fee is not a debt. ................................................ 17

     C.     A convenience fee is not an amount "incidental to the principal obligation." ................................................................................ 19

II.     Ocwen's convenience fees do not violate the FDCPA because Ocwen does not collect them. ............................................................................... 22

     A.     The FDCPA only regulates debt collection activity. ................ 22

B.     Ocwen does not "collect" convenience fees or act as a debt collector with respect to them, so the FDCPA does not apply. ..........24

III.    Ocwen's convenience fees do not violate the FDCPA because they are permitted by law. ..........................................................................26

A.     The FDCPA does not prohibit collection of an amount that any law permits to be collected...................................................26

B.     Convenience fees are permitted by law. ............................................29

1.    Federal law permits convenience fees. ....................................29

2.    Established Florida contract law permits convenience fees. ...................................................................................33

IV.    Convenience fees support a valuable consumer service that the FDCPA is not intended to restrain.................................................................37

Conclusion .....................................................................................................39

Certificate of Compliance ...........................................................................41

Certificate of Service ....................................................................................42

Statutory Appendix ................................................................................ A-1

**Cases**

*Alexander v. Carrington Mortg. Servs., LLC*,
  23 F.4th 370 (4th Cir. 2022) ........................................................................15, 16

*Anderman v. JP Morgan Chase Bank, Nat'l Ass'n*,
  803 F. App'x 290 (11th Cir. 2020) ...................................................................22

*Bardak v. Ocwen Loan Servicing, LLC*,
  No. 8:19-CV-1111-24TGW, 2020 WL 5104523 (M.D. Fla. Aug.
  12, 2020) ...........................................................................................................25

* *Est. of Campbell v. Ocwen Loan Servicing, LLC*,
  467 F. Supp. 3d 1262 (S.D. Fla. 2020) ................................ 18, 19, 21, 22, 25, 37

*CBS Inc. v. PrimeTime 24 Joint Venture*,
  245 F.3d 1217 (11th Cir. 2001) .......................................................................27

*CFPB v. Ocwen Fin. Corp.*,
  No. 1:13-cv-2025, ECF No. 12-1 (D.D.C. Feb. 26, 2014) ...............................32

*Conn. Nat'l Bank v. Germain*,
  503 U.S. 249 (1992)..........................................................................................16

*Davidson v. Cap. One Bank (USA), N.A.*,
  797 F.3d 1309 (11th Cir. 2015) .......................................................................10

*DuBois v. Ford Motor Credit Co.*,
  276 F.3d 1019 (8th Cir. 2002) .........................................................................18

* *Duncan v. Asset Recovery Specialists*,
  907 F.3d 1016 (7th Cir. 2018) ......................................................................23, 4

* *Flores v. Collection Consultants of Cal.*,
  No. SA CV 14-0771-DOC, 2015 WL 4254032 (C.D. Cal. Mar. 20,
  2015) ..................................................................................................21, 35, 38

*FTC v. Countrywide Home Loans, Inc.*,
  No. 2:10-cv-04193, ECF No. 6 (C.D. Cal. June 15, 2010) ...............................32

*FTC v. Green Tree Servicing LLC*,
No. 15-cv-02064, ECF No. 5 (D. Minn. Apr. 23, 2015) ...................................32

*Garbutt v. Ocwen Loan Servicing, LLC*,
No. 8:20-CV-136-T-36JSS, 2020 WL 5641999 (M.D. Fla. Sept.
22, 2020) ...........................................................................................................22

*Hart v. Credit Control, LLC*,
871 F.3d 1255 (11th Cir. 2017) ........................................................................14

*Henson v. Santander Consumer USA Inc.*,
582 U.S. 79 (2017) ...............................................................................................2

*Kier v. Ocwen Loan Servicing, LLC*,
122 F. Supp. 3d 786 (N.D. Ill. 2015) ................................................................31

*Kisor v. Wilkie*,
139 S. Ct. 2400 (2019) .......................................................................................36

*Lang v. Ocwen Loan Servicing, LLC*,
No. 3:20-CV-81-J-20MCR, 2020 WL 5104522 (M.D. Fla. July 17,
2020) ..................................................................................................................25

* *Mann v. Nat'l Asset Mgmt. Enters., Inc.*,
No. 04-1304, 2005 WL 8163297 (C.D. Ill. Feb. 24, 2005) ..........................22, 25

*McWhorter v. Ocwen Loan Servicing, LLC*,
No. 2:15-cv-01831-MHH, 2017 WL 3315375 (N.D. Ala. Aug. 3,
2017) ..................................................................................................................27

* *Meitzinger v. Sortis Holdings, Inc.*,
No. 18-cv-2042, 2019 WL 1471338 (E.D.N.Y. Apr. 3, 2019) ..........................35

*Morrissette-Brown v. Mobile Infirmary Med. Ctr.*,
506 F.3d 1317 (11th Cir. 2007) ........................................................................10

* *Nadalin v. Auto. Recovery Bureau, Inc.*,
169 F.3d 1084 (7th Cir. 1999) ..........................................................................24

*Newman v. Checkrite Cal., Inc.*,
912 F. Supp. 1354 (E.D. Cal. 1995) ..................................................................27

*Peery v. City of Miami*,
   977 F.3d 1061 (11th Cir. 2020) ........................................................26

*Russello v. United States*,
   464 U.S. 16 (1983) ..........................................................................27

*St. Joe Corp. v. McIver*,
   875 So. 2d 375 (Fla. 2004) ...............................................................33

*TRW Inc. v. Andrews*,
   534 U.S. 19 (2001) ...........................................................................16

* *Turner v. PHH Mortg. Corp.*,
   467 F. Supp. 3d 1244 (M.D. Fla. 2020) ...............................25, 35, 37

*Tuttle v. Equifax Check*,
   190 F.3d 9 (2d Cir. 1999) .................................................................28

*United States v. Consumer Portfolio Servs., Inc.*,
   No. SACV14-00819, ECF No. 9 (C.D. Cal. June 11, 2014) ..............32

*United States v. Select Portfolio Servicing, Inc.*,
   No. 03-12219-DPW, ECF No. 96 (D. Mass. Sept. 4, 2007) ..............32

* *Veale v. Citibank, F.S.B.*,
   85 F.3d 577 (11th Cir. 1996) .............................................20, 21, 31

*Vega v. T-Mobile USA, Inc.*,
   564 F.3d 1256 (11th Cir. 2009) ........................................................33

*Villarreal v. R.J. Reynolds Tobacco Co.*,
   839 F.3d 958 (11th Cir. 2016) ..........................................................28

*In re Walter Energy, Inc.*,
   911 F.3d 1121 (11th Cir. 2018) ........................................................16

**Statutes**

15 U.S.C. § 1637 .......................................................................30, 31, 38

* 15 U.S.C. § 1692a ...........................................................17, 18. 23, 24

* 15 U.S.C. § 1692f................................................ 1, 13–17, 19, 22–29, 35

15 U.S.C. § 1693 ................................................................................30, 37

15 U.S.C. § 1693a ....................................................................................30

15 U.S.C. § 1693c ....................................................................................30

FLA. ADMIN. CODE § 69C-4.0045 ............................................................36

FLA. STAT. § 215.322(3)(b) .......................................................................36

**Other Authorities**

12 C.F.R. Pt. 1026, Supp. I, Part 1, ¶6(a)(2).2.x ..............................31, 32

12 C.F.R. § 205.7 ....................................................................................30

12 C.F.R. § 226.10 ........................................................................30, 31, 38

12 C.F.R. § 1005.7 ....................................................................................30

12 C.F.R. § 1026.10 ......................................................................30, 31, 38

38 C.F.R. § 36.4529 ..................................................................................33

Statements of General Policy or Interpretation Staff Commentary on
  the Fair Debt Collection Practices Act, 53 Fed. Reg. 50,097 (Dec.
  13, 1988) ................................................................................15, 28, 34

Truth in Lending, 67 Fed. Reg. 72,618 (Dec. 6, 2002) ..........................21

Loan Guaranty Vendee Loan Fees, 81 Fed. Reg. 74,382 (Oct. 26,
  2016) ..................................................................................................33

CFPB, Advisory Opinion on Debt Collectors' Collection of Pay-to-
  Pay Fees (June 29, 2022) .........................................................15, 35

ANTONIN SCALIA & BRYAN A. GARNER, READING LAW 170 (2012) ......................26

*Incidental*, NEW SHORTER ENGLISH OXFORD DICTIONARY (1993) ..........................19

**STATEMENT OF THE ISSUES**

1.  The FDCPA (15 U.S.C. § 1692f(1)) bars a debt collector from collecting "any amount" from a borrower, including "any interest, fee, charge, or expense" that is "incidental to the principal obligation," unless the amount is expressly authorized by the underlying debt agreement or permitted by law. The District Court recognized that the FDCPA's prohibition only applied to collection of debts or amounts incidental to such debts, but held that the convenience fee was an expense incidental to the mortgage debt. Did the District Court err in holding an optional fee is incidental to the mortgage debt under the FDCPA?

2.  The FDCPA (15 U.S.C. § 1692f) prohibits a "debt collector" from using certain means to "collect or attempt to collect any debt." The District Court held that Ocwen was a debt collector as to the underlying mortgage loan and so it did not matter whether Ocwen was "collecting" the convenience fees themselves. Did the District Court err in its interpretation of the "collection" element of the FDCPA?

3.  The FDCPA (15 U.S.C. § 1692f(1)) permits a debt collector to collect any amount from a borrower that is "permitted by law." The District Court held that "permitted by law" requires that a statute expressly authorizes convenience fees, and

1

it held that neither the EFTA nor TILA did so. However, the District Court did not address Ocwen's argument that state contract law permits the fees. Are convenience fees "permitted by law" according to the text of the FDCPA?

## STATEMENT OF THE CASE

### A. **Statement of facts.**

1. Glover's and Booze's mortgages.

This case was submitted for judgment on stipulated facts in lieu of trial. *Glover*, R-73; *Booze*, R-64.

On November 15, 2004, Glover obtained a $131,200.00 loan from HomeAmerican Credit Inc. to purchase a primary residence in Charleston, SC. *Glover*, R-73-2. Likewise, on August 23, 2006, Booze obtained an $186,601.50 loan from New Century Mortgage Corporation to purchase a primary residence in Pooler, Georgia. *Booze*, R-64-2. Each loan was evidenced by a promissory note and secured by a security deed or mortgage. *Glover,* R-73-2; *Booze*, R-64-2.

Each note requires the borrower (Glover or Booze) to make monthly payments on the 1st of each month by mail. *Glover*, R-73(1)-1 & *Booze*, R-64(1)-1 ¶1 ("I will make all payments under this Note in the form of cash, check, or money order."), ¶3 (requiring delivery to physical address). For Booze, if payment is not received by the 15th of each month, a late fee of 5 percent is assessed. *Booze*, R-64(1)-1 ¶7. Glover's loan is even stricter: if payment is not received by the 10th of each month, a late fee of 10 percent is assessed. *Glover*, R-73(1)-1 ¶7.

Similarly, the mortgage and security deed[2] require payment in "U.S. currency" via "check or other instrument." *Glover*, R-73(2)-4 & *Booze*, R-64(2)-3. Nothing in the loan documents obligates the lender or servicer to accept payment by any other means, though the lender or servicer may choose to require other means in certain circumstances. *Id.*

When Ocwen took over the servicing of their loans, Glover and Booze were each in default. *Glover*, R-73-3 ¶¶17, 18; *Booze*, R-64-3 ¶¶17, 18.

2.    <u>Glover's and Booze's convenience fee payments.</u>

Glover and Booze each made numerous mortgage payments to Ocwen without incurring a fee. *Glover*, R-73-5; *Booze*, R-64-5. But on 26 occasions, Glover chose to utilize one of Ocwen's expedited payment methods, either via telephone (using an interactive voice recording ("IVR") system) or online. *Glover*, R-73-3–R-73-5. Booze chose to use telephonic expedited methods on 10 occasions. *Booze*, R-64-3–R-64-4. For each transaction, Glover and Booze agreed to pay the price for the service before making the payment in expedited fashion and incurring the agreed-

---

[2] For clarity, security deeds or deeds of trust are hereafter subsumed in the term "mortgage" herein, as the distinction makes no difference in this case.

upon fee. *Glover*, R-73(9)-3; *Booze*, R-64(7)-3. Nothing in Glover's or Booze's promissory note or mortgage requires Ocwen to accept such payment methods. *Glover*, R-73-3; *Booze*, R-64-3. But Ocwen offers these optional expedited payment methods to allow borrowers to make payments via telephone or online in exchange for a price. *Glover*, R-73-3; *Booze*, R-64-3.

Many borrowers utilize these payment methods because they are more expedient than mailing a check or money order. *Id*. Expedited online and telephonic payment and processing enables borrowers nearing payment deadlines to avoid higher late charges or negative credit reporting for payments that would otherwise be late; in some cases, they enable borrowers to avoid commencement of foreclosure for extended delinquencies of 90 days or more. *Id*. For example, Glover's late fee on a $1,471.98 mortgage payment could have been as high as $147.20 (10%) if her payment were received after the 10th of the month. *See Glover*, R-73(8)-1. Booze's late fee on a $1,911.65 mortgage payment could have been as high as $95.58 (5%) if received after the 15th of the month. *Booze*, R-64(6)-11.[3] But Glover and Booze paid convenience fees ranging from $7.50 to $12.00 to make many of their payments on or close to the deadline. *See Glover*, R-73-3–R-73-5; *Booze*, R-64-3–R-64-4. For

---

[3] According to the borrowers' monthly statements, at times, Ocwen charged smaller late fees such as $46.09 and $79.69. *Glover*, R-73(8)-1; *Booze*, R-64(6)-11. The charges for convenience fees were far less than those fees as well.

Glover and Booze, this avoided late fees that were between 4 and 20 times as much as the convenience fees. Thus, the value of the expedited payment and processing service was worth the price.

Ocwen charges convenience fees as an expressly agreed-upon price for optional expedited payment services it isn't otherwise contractually required to offer at all. *Glover*, R-73-2; *Booze*, R-64-3. Ocwen's convenience fees have ranged from $7.50 to $19.50, depending on whether payment is made online, by IVR, or by phone to a representative. *Glover*, R-73-5; *Booze*, R-64-4. Ocwen's standard procedures for accepting telephonic or online payments disclose to borrowers (1) that they are using an optional payment method, (2) that they will be charged a convenience fee to use the optional payment method, and (3) the amount of that fee. *Glover*, R-73-5, R-73(5), R-73(6), & R-73(7); *Booze*, R-64-4 & R-64(5). Ocwen then obtains the borrower's consent, either electronically (for online and IVR payments) or in an oral recording (for payments made telephonically to a representative). *Id*. A small portion of the fees is shared with a third-party processor. *Glover*, R-73-5; *Booze*, R-64-4.

Each time they decided to use these optional services, Ocwen disclosed to Glover and Booze that each would be charged the convenience fee to use the optional payment method, disclosed the amount of the fee, and obtained their consent to be

charged the fee. *Glover*, R-73-5, R-73(5), R-73(6), & R-73(7); *Booze*, R-64-5 & R-64(5). For example, the IVR system advises up front "that you may be charged a fee for using [the Speedpay[4]] service" and explains "the amount of the fee will be provided to you for your acceptance before your transaction is completed." *Booze*, R-64(5). As part of the IVR payment process, the IVR script informs a borrower, "There will be a fee for using this service. This fee is in addition to any fees charged by your financial institution." *Id.* Ocwen also discloses that "a portion of the fee will be retained by us." *Id.* Similarly, Ocwen's online payment system contains the following disclosure:

> *You may be charged a fee for using this service*. The amount of the fee will be displayed to you for your acceptance before your transaction is completed. *Please note that you are not required to use this payment service or this payment provider, as we do accept other payment methods that you can use without incurring a fee*. You have the right to select your own payment method and provider. If you do not wish to proceed with making an online payment, please refer to the other payment options available on the Payment Options tab of our website.

*Glover*, R-73(5), R-73(6), & R-73(7). (emphasis added). Consistent with this disclosure, neither Glover nor Booze has ever denied that she always had other options with no fee, that Ocwen disclosed the fee, or that they agreed to the convenience fee before they paid it.

---

[4] "Speedpay" is the name of the system historically used for expedited payments.

**B.**    <u>Course of proceedings.</u>

Plaintiffs Glover and Booze simultaneously filed suit in Florida state court on December 12, 2019, alleging violation of the FDCPA. *Glover*, R-1(2)-5; *Booze*, R-1(2)-2. The same counsel represented each. *Id.* Ocwen timely removed each lawsuit to the United States District Court for the Southern District of Florida. *Glover*, R-1; *Booze*, R-1.

Ocwen moved to dismiss each complaint for failure to state a valid claim under Rule 12(b)(6), arguing that convenience fees do not violate the FDCPA. *Glover*, R-5; *Booze*, R-7. Specifically, Ocwen argued that convenience fees are neither a "debt" nor "incidental to" a debt, that Ocwen is not a "debt collector" with regard to the fee, that the parties had a separate "agreement" permitting the convenience fees, that Glover and Booze each voluntarily paid Ocwen, and that convenience fees are "permitted by law." *Glover*, R-5; *Booze*, R-7. Glover and Booze each opposed the motion. *Glover*, R-9; *Booze*, R-11.

Aside from holding that Glover's claim was partially time-barred, the District Court denied Ocwen's motions to dismiss. *Glover*, R-20; *Booze*, R-12. The District Court held that convenience fees "are expenses incidental to the principal obligation" and thus are covered by the FDCPA. *Glover*, R-20-5; *Booze*, R-12-5. It

also held that the FDCPA applied to the convenience fees Ocwen charged for offering extra expedited payment services because Ocwen was acting as a "debt collector" with regard to the underlying loans. *Glover*, R-20-8; *Booze*, R-12-8. And ultimately, the District Court held that the FDCPA barred the convenience fees because they are not permitted by law or "expressly authorized by the agreement creating the debt." *Glover*, R-20-7; *Booze*, R-12-7.

After this decision, the cases were stayed pending this Court's decision in *Bardak v. Ocwen Loan Servicing, LLC*, Appeal No. 20-13297. *Glover*, R-49; *Booze*, R-40. However, the District Court lifted the stay after this Court granted the appellant's contested motion to dismiss the Bardak appeal. *Glover*, R-51; *Booze*, R-42.

The Parties in both these cases then stipulated to a bench trial, and the District Court ordered the cases consolidated for trial. *Glover*, R-66, R-69; *Booze*, R-58, R-62. Recognizing that these cases turned on pure issues of law, the Parties filed a Joint Stipulation of Facts in each case, followed by separate proposed Findings of Fact and Conclusions of Law and responses to each. *Glover*, R-73, R-76, R-77, R-78, R-79; *Booze*, R-64, R-67, R-68, R-69, R-70.

On August 1, 2023, the District Court entered a judgment in favor of Booze. R-73. The next day, the District Court entered a judgment in favor of Glover. R-81. The District Court made identical findings of fact and conclusions of law in each case, which largely relied upon its prior findings at the motion to dismiss stage. *Glover*, R-82; *Booze*, R-72.

On August 7, 2023, Ocwen filed a notice of appeal in each case. The case *Sheryl Glover v. Ocwen Loan Servicing, LLC* ("*Glover*") was docketed as No. 23-12578-J and *Cathy Booze v. Ocwen Loan Servicing, LLC* ("*Booze*") was docketed as No. 23-12579-H. This Court granted Ocwen's motion to consolidate appeals on November 9, 2023.

**C.     Standard of review.**

This Court reviews the District Court's statutory interpretation *de novo*. *Davidson v. Cap. One Bank (USA), N.A.*, 797 F.3d 1309, 1312 (11th Cir. 2015). The Court reviews any findings of fact after a bench trial for "clear error." *Morrissette-Brown v. Mobile Infirmary Med. Ctr.*, 506 F.3d 1317, 1319 (11th Cir. 2007). Because the facts were stipulated and are not in dispute (*Glover*, R-73; *Booze*, R-64), there are no disputed factual findings to review.

## SUMMARY OF THE ARGUMENT

Does charging a disclosed and agreed-upon price for offering an optional and more expedited mortgage payment method that the servicer is not required to offer violate the FDCPA? This is an open issue in this Circuit. The majority of district courts in this Circuit have found these convenience fees do not violate the FDCPA, some expressly recognizing the need for this Court's ruling in light of the intra-Circuit split. The Court should hold that these convenience fees do not violate the FDCPA because they are voluntarily paid for an optional extra service that borrowers are never required to use.

The FDCPA does not prohibit a borrower from voluntarily bargaining for additional services distinct from the underlying mortgage loan. Interpreting the FDCPA that way is not consumer friendly and defies common sense. Glover and Booze did not incur convenience fees here because they had to incur them to pay their mortgage. They incurred the convenience fees because they chose to use an optional payment service to expedite their payments rather than the slower, less convenient payment methods specified in their loan documents. Nothing about that extra service arrangement constitutes debt collection, which is the activity the FDCPA is designed to regulate. Indeed, under Glover and Booze's theory, a mortgage servicer could never offer *any* additional services to a borrower for a price.

Plaintiffs' theory is not consistent with the FDCPA's text or purpose. The District Court therefore erred in holding that Ocwen's convenience fees violate the FDCPA.

Glover and Booze failed to meet the textual requirements for any FDCPA claim. The FDCPA regulates debt collection activities, and Ocwen is not collecting a debt when it charges a disclosed price for optional expedited payment and processing services, services which no law or contract requires it to offer at all. Ocwen's convenience fees are not "debts" because they are not obligations. Likewise, convenience fees for purely optional expedited payment methods are not "incidental" to the borrower's mortgage loan debt because the borrower has ways to pay her mortgage that do not incur fees—the slower payment methods actually specified in the note and mortgage, such as mailing or delivering a check. The fee flows from a voluntary choice to buy new, extra and purely optional payment methods and services that their servicer has no obligation to offer. The fee is not a natural result of the mortgage debt itself. Moreover, whereas the mortgage payment on the mortgage debt is received on behalf of the lender, a convenience fee is paid directly to Ocwen—for Ocwen's own services. Thus, Ocwen never "collects" these convenience fees, because they were never owed until the borrower elected to use a new payment service in exchange for a fee.

Ocwen's voluntary convenience fees also do not violate § 1692f(1)'s specific prohibition on collecting amounts "incidental" to the principal obligation unless expressly authorized or "permitted by law." Convenience fees are permitted by law. The Electronic Fund Transfer Act and the Truth in Lending Act permit prices to be charged for these types of electronic transfer services. Regulators and government entities also endorse convenience fees in a variety of payment contexts, so long as alternative payment methods are available and the borrower affirms her agreement to incur the fee. There is no question under the stipulated facts here that each time the optional payment services are used, Ocwen discloses the convenience fee and availability of no-fee payment options before the fee is charged. Therefore, federal law permits these fees.

Further, the FTC has acknowledged that the FDCPA allows "reasonably avoidable" fees, applying basic contract law principles to find that a consumer may enter a separate agreement for separate services. Under Florida law, Glover's and Booze's decision to accept Ocwen's offer of expedited payment services after full disclosure creates a valid contract. This too confirms that the services are permitted by law.

**ARGUMENT**

**I.    Ocwen's convenience fees do not violate the FDCPA because they are neither a debt nor incidental to a debt.**

The FDCPA "imposes civil liability on debt collectors for certain prohibited debt collection practices." *Hart v. Credit Control, LLC*, 871 F.3d 1255, 1257 (11th Cir. 2017). The prohibition at issue in this appeal is 15 U.S.C. § 1692f. (A Statutory Appendix is attached for the Court's convenience.)

**A.    The FDCPA prohibits collection of "amounts" that are debts or incidental to debts.**

Section 1692f prohibits a "debt collector" from "us[ing] unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. The section then enumerates several "means to collect or attempt to collect" a debt that are deemed unfair or unconscionable. The relevant subsection prohibits the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *Id.* § 1692f(1).

The FDCPA does not define the term "amount," but a loan servicer cannot violate this subsection unless it is "collect[ing] or attempt[ing] to collect any debt." *Id.* § 1692f. So, read in context, subsection 1692f(1) prohibits debt collectors from

14

"collect[ing]" an "amount" if that amount is itself a function of the debt. The use of the explanatory phrase "incidental to the principal obligation" indicates that Congress was attempting to regulate amounts charged as part and parcel of collecting the debt itself, like "interest." *Id.* This is the interpretation the FTC adopted: "'amount' includes not only the debt, but also any incidental charges, such as collection charges, interest, service charges, late fees, and bad check handling charges." Statements of General Policy or Interpretation Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50,097, 50,107–08 (Dec. 13, 1988).

On the other hand, the Fourth Circuit and the CFPB have gone a step beyond the statute, finding that a court need not analyze whether an amount is debt or "incidental" to a debt to determine whether subsection 1692f(1) prohibits its collection. In their view, the FDCPA prohibits a debt collector from collecting "any amount" *at all* for any reason or any service unless the loan agreement or a state law affirmatively authorizes collection of that amount. *See, e.g.*, *Alexander v. Carrington Mortg. Servs., LLC*, 23 F.4th 370, 377 (4th Cir. 2022); CFPB, Advisory Opinion on Debt Collectors' Collection of Pay-to-Pay Fees (June 29, 2022), available at https://www.consumerfinance.gov/rules-policy/final-rules/advisory-opinion-on-debt-collectors-collection-of-pay-to-pay-fees/. However, this reasoning ignores the context of the statute: regulating debt collection. The FDCPA is not designed to

regulate behavior that is *not* debt collection, and therefore, it makes sense that the prohibition on collecting "amounts" would turn on whether those amounts are incidental to the debt.

In addition, the Fourth Circuit and the CFPB's interpretation of subsection 1692f(1) renders the parenthetical contained therein superfluous. If the statute meant "any amount" and nothing more, then there was no need to include a parenthetical explaining it: "Any amount" would simply mean any amount. The Fourth Circuit suggested that whether the amount was "incidental" did not matter and Congress simply intended to provide examples of "amounts." *Alexander*, 23 F.4th at 377. But were that the case, Congress could have said "any interest, fee, charge, or expense, whether or not incidental to the principal obligation" or omitted the limitation of "incidental" entirely. Simply stated, there is no purpose in including the word "incidental" if it does not matter whether the amount is incidental. This Court should not interpret the statute in a manner that renders a word Congress chose meaningless. *See, e.g.*, *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992) ("[C]ourts should disfavor interpretations of statutes that render language superfluous."); *In re Walter Energy, Inc.*, 911 F.3d 1121, 1146 (11th Cir. 2018) (The Court "generally construe[s] a statute so that 'no clause, sentence, or word' is rendered 'superfluous, void, or insignificant.'" (quoting *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001))).

For these reasons, a debt collector's charge may violate subsection 1692f(1) if—but only if—it is either a debt or an amount "incidental" to that debt. For the reasons explained below, Ocwen's convenience fees are neither.

### B.   A convenience fee is not a debt.

The FDCPA regulates "debt collectors" collecting "debts." "The term 'debt' means any obligation or alleged obligation of a consumer to pay money arising out of a transaction . . . primarily for personal, family, or household purposes . . . ." 15 U.S.C. § 1692a(5).

A convenience fee is not a debt because the fee is not "owed" or an "obligation." *Id*. The borrower is not obliged to incur this fee to pay their mortgage. Borrowers have other payment options that do not incur a fee, including paying by mail. *See Glover*, R-73-5; *Booze*, R-64-5. Borrowers can also pay a third party like FedEx, a bank, or an express courier to deliver payment, although the prices for such services are often greater than Ocwen's convenience fee. Given the availability of these options, it is not accurate to describe convenience fees as "pay-to-pay" fees, as some authorities have done. In fact, the notes and mortgages at issue did not give either Booze or Glover any right to pay their mortgages online or by phone at all.

Instead, convenience fees are the purchase price the borrower voluntarily agrees to pay for an additional, optional and indisputably extra service: same-day payment, receipt, and processing via phone or internet. Because the borrower *chooses* to use an admittedly extra service, the fee is not "obligatory." And nothing in the FDCPA prohibits Ocwen from charging a price for this optional, extra service when the borrower separately and contemporaneously agrees to it after full disclosure. *See, e.g.*, *Est. of Campbell v. Ocwen Loan Servicing, LLC*, 467 F. Supp. 3d 1262, 1265 (S.D. Fla. 2020) (convenience fees are a "separate transaction" that the FDCPA does not prohibit); *cf. DuBois v. Ford Motor Credit Co.*, 276 F.3d 1019, 1024 (8th Cir. 2002) (holding no FDCPA violation where fees charged fees in connection with plaintiffs' "voluntar[y]" second lease and plaintiffs "voluntarily agreed to pay the . . . fees").

Further, a convenience fee cannot be a debt because it is paid contemporaneously with the service being provided. No "obligation" to pay is created when a person immediately pays for a good or service contemporaneously received. A person does not create a "debt" when they pay for home delivery of their groceries, a concert ticket through a third-party website, or any other service they purchase and pay for immediately. Nor is the grocery delivery service or the ticket website "collect[ing]" a debt in receiving those payments. Nothing about these run-

of-the-mill consumer transactions creates an *obligation* to pay because full payment is made contemporaneously with the goods or services being received. *See, e.g.*, *Campbell*, 467 F. Supp. 3d at 1264–65 (recognizing that the convenience fee is not a "debt" because it "isn't yet owed"). As a result, those charges are not debts.

**C.      A convenience fee is not an amount "incidental to the principal obligation."**

Because a convenience fee is not a debt, the fee could only violate the FDCPA if it is an amount "incidental" to a debt under 15 U.S.C. § 1692f(1). But whether the borrower chooses to purchase an extra expedited payment service directly from the servicer does not alter the debt owed to the lender or the remittance of the underlying mortgage payment to the lender. Ocwen's convenience fees therefore are not "incidental" to the principal obligation and so do not violate the FDCPA.

An event is incidental when it is "[l]iable to happen to; naturally attaching to." *Incidental*, NEW SHORTER ENGLISH OXFORD DICTIONARY (1993). Convenience fees did not "naturally attach[ ] to" Glover's or Booze's loan. *Id.* Glover and Booze could always have paid their mortgages without incurring any fees simply by mailing checks or money orders as their notes specified. *See Glover,* R-73-5, R-73(4), R-73(5), R-73(6), & R-73(7) (explaining optional nature of telephonic payment

methods and existence of alternative options). Again, neither borrower's note requires the lender or servicer to accept telephone or online payments at all.

The District Court applied a broader meaning of "incidental," suggesting an amount is "incidental" to the principal obligation if it is in any sense "dependent" on that obligation. *Glover*, R-20-4; *Booze*, R-12-4. In the District Court's view, the convenience fee was "dependent" on the mortgage because "there could be no Speedpay fee without a payment to make more 'speedy.'" *Glover*, R-20-4; *Booze*, R-12-4. But that does not make the fee "dependent" on the mortgage; the fee does not vary based on the amount owed but, instead, is a flat fee for a specific service. The District Court's logic stretches the FDCPA to cover almost any activity remotely related to a debt, as no relationship would exist but for the underlying debt. Under this Court's precedent, this is an incorrect standard.

This Court has previously explained the meaning of "incidental" in the context of another consumer financial statute, the Truth in Lending Act. In *Veale v. Citibank, F.S.B.*, 85 F.3d 577 (11th Cir. 1996), the Court considered whether a FedEx fee was "incidental to the extension of credit" such that TILA required its disclosure as a finance charge. *Id.* at 579. The Court concluded it was not incidental: "the borrower can choose to avoid the Federal Express fee by having the documents sent via regular

mail." *Id.* The Federal Reserve later echoed *Veale*'s reasoning: "[a] fee charged for expediting a consumer's payment would not appear to be incidental to the extension of credit if this payment method is not established as the regular payment method for the account." Truth in Lending, 67 Fed. Reg. 72,618, 72,618 (Dec. 6, 2002).

The District Court's logic is squarely wrong under this precedent. In *Veale*, there would be no FedEx fee but for the extension of credit, yet this Court made clear that the fee was *not* incidental. 85 F.3d at 579. So too here. As in *Veale*, Glover and Booze could avoid this fee by sending payment via mail, so it did not naturally attach to their loans.

In short, because Glover and Booze could choose to pay by mail without a fee exactly as specified in their notes, the convenience fee for an extra service allowing them to pay in a more expedited fashion was never "incidental" to payment of their mortgages. As a result, the FDCPA does not bar the fee. *See Flores v. Collection Consultants of Cal.*, No. SA CV 14-0771-DOC (RNBx), 2015 WL 4254032, at *10 (C.D. Cal. Mar. 20, 2015) (holding that an optional convenience fee was not "'incidental' to the principal obligation" because it "would be imposed only if the debtor elected to pay via credit card" and the defendant "provided for payment without additional charge if the debtor elected to pay by check"); *Campbell*, 467 F.

Supp. 3d at 1265 ("[C]onvenience fees are a separate transaction neither part of, nor incidental to, the transferred debt."); *Garbutt v. Ocwen Loan Servicing, LLC*, No. 8:20-CV-136-T-36JSS, 2020 WL 5641999, at *4 (M.D. Fla. Sept. 22, 2020) ("[T]he convenience fee is a separate optional fee that originated from Defendant and was not a fee stemming from the underlying mortgage.").

## II. Ocwen's convenience fees do not violate the FDCPA because Ocwen does not collect them.

### A.   The FDCPA only regulates debt collection activity.

As this Court has recognized, debt collection is an essential prerequisite for any claim under 15 U.S.C. § 1692f. *See Anderman v. JP Morgan Chase Bank, Nat'l Ass'n*, 803 F. App'x 290, 292 (11th Cir. 2020) (recognizing the "challenged conduct" must "relate[ ] to debt collection" for the plaintiff to state an FDCPA claim). "'Collection' in the debt collection context is commonly understood as being preceded by a demand for a fee allegedly owed." *Mann v. Nat'l Asset Mgmt. Enters., Inc.*, No. 04-1304, 2005 WL 8163297, at *2 (C.D. Ill. Feb. 24, 2005).

The FDCPA only regulates the activity of debt collectors. *See Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 83 (2017) (holding FDCPA only applies to those who meet strict definition of "debt collector"); *Campbell*, 467 F. Supp. 3d at 1265 ("The purpose of . . . the FDCPA . . . is to prohibit debt collectors

from using unfair or unconscionable means to collect any debt."). The FDCPA defines a "debt collector" as a person or entity who either maintains a "business the principal purpose of which is the collection of any debts" or "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Excluded from the definition of debt collector is "[a]ny person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F)(iii).

The District Court's interpretation of the FDCPA fails to reckon with this text. As discussed above, the District Court skipped straight to whether the optional fee was "incidental" to the borrower's mortgage loan. *See Glover*, R-82; *Booze*, R-72. But the prerequisite activity of a "debt collector" "collect[ing] or attempt[ing] to collect any debt" (15 U.S.C. § 1692f) cannot be read out of the FDCPA. If Ocwen is not collecting a debt in charging a convenience fee, the FDCPA does not apply to the charging of that fee. *See, e.g.*, *Duncan v. Asset Recovery Specialists*, 907 F.3d 1016, 1018 (7th Cir. 2018) (rejecting § 1692f claim because "[t]here is no way . . . to view the handling fee as some sort of masked demand for a principal payment to [the lender]").

**B.** **Ocwen does not "collect" convenience fees or act as a debt collector with respect to them, so the FDCPA does not apply.**

Applying this understanding of debt collection, the FDCPA cannot apply to Ocwen's convenience fees. As explained above, the fees are never "owed" since they are charged contemporaneously with an optional extra service being provided. Further, no demand precedes the assessment of a convenience fee: It is charged when and only when the borrower chooses to use a service that Ocwen is not required to offer at all.

Moreover, the FDCPA only classifies activity as "collection"—or an actor as a "debt collector"—when the activity is performed on behalf of *another*. *See* 15 U.S.C. § 1692a(6)(F) (defining a debt collector as "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another"); *see also id.* § 1692a(6)(F)(ii) (excluding "activity [that] concerns a debt which was originated" by the defendant from the definition of "debt collector"). Thus, a fee is only "collect[ed]" within the meaning of the FDCPA when it is "demanded . . . on behalf of [the] lender." *Duncan*, 907 F.3d at 1017–18 (holding $100 fee paid for recovery of personal property from repossessed vehicle is not governed by § 1692f); *see also Nadalin v. Auto. Recovery Bureau, Inc.*, 169 F.3d 1084, 1086 (7th Cir. 1999) ("So far as the [FDCPA] is concerned, the only thing that's important is that the

repossessor was not acting as the lender's agent when in effect it asserted a lien in order to enforce its $25 fee.").

Ocwen does not "collect" these fees within the meaning of the FDCPA. Ocwen does not charge convenience fees on another's behalf; it charges them on its own behalf, for extra and purely optional services it offers itself. *See Turner v. PHH Mortg. Corp.*, 467 F. Supp. 3d 1244, 1247–48 (M.D. Fla. 2020) (holding that PHH was not acting as a debt collector with respect to charges for an "optional service [with] a separate fee that originated with PHH" rather than another); *Bardak v. Ocwen Loan Servicing, LLC*, No. 8:19-CV-1111-24TGW, 2020 WL 5104523, at *4 (M.D. Fla. Aug. 12, 2020) (holding that Ocwen was not acting as a debt collector with respect to convenience fees since they "originated with Ocwen" and were not "due another"); *Lang v. Ocwen Loan Servicing, LLC*, No. 3:20-CV-81-J-20MCR, 2020 WL 5104522, at *3 (M.D. Fla. July 17, 2020) (same); *Mann*, 2005 WL 8163297, at *2 (dismissing § 1692f claims based on convenience fees and rejecting the argument that "offering a service for a price is also 'collection' within the meaning [the FDCPA]"); *Campbell*, 467 F. Supp. 3d at 1265 (recognizing that "[t]he debt itself" was what Ocwen was "collect[ing]" and the convenience fee was not "part of" that debt).

**III. Ocwen's convenience fees do not violate the FDCPA because they are permitted by law.**

**A.    The FDCPA does not prohibit collection of an amount that any law permits to be collected.**

The FDCPA also makes plain that a debt collector may collect amounts "permitted by law." 15 U.S.C. § 1692f(1). In the United States, anything that is not prohibited by law is permitted by law. Further, the text of the FDCPA does not in any way limit the scope of the "law" that may "permit" collection of an amount. Thus, a defendant need not identify a specific state statute expressly authorizing assessment of convenience fees to satisfy the "permitted by law" requirement. Instead, *any* law, including federal statutes and common law, may permit the collection, including by not prohibiting it.

Indeed, "permitted by law" *cannot* mean "expressly authorized by statute," as the CFPB has claimed in guidance. Congress clearly knows how to say "expressly authorized" when it wants because, in the very same sentence, it chose to use "expressly authorized" with respect to the "agreement creating the debt." 15 U.S.C. § 1692f(1). "[A] material variation in terms" within the same section of a statute "suggests a variation in meaning." ANTONIN SCALIA & BRYAN A. GARNER, READING LAW 170 (2012); *see also Peery v. City of Miami*, 977 F.3d 1061, 1072 (11th Cir. 2020) ("Material variations in the text reflect variations in meaning."). In fact, even

when "Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (internal quotation omitted). Thus, by not using the same language with respect to the "law" in the very same section of the statute, Congress recognized that legal permission could be given through a lack of prohibition. *See CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1226 (11th Cir. 2001) ("Where Congress knows how to say something but chooses not to, its silence is controlling.") (internal quotation omitted).

Certain courts nevertheless have rewritten the phrase "permitted by law" to mean "expressly authorized by state statute." For example, the *McWhorter* court found that "'the word "permitted" requires the defendants to identify some state statute which "permits," i.e. authorizes or allows, in however general a fashion, the fees or charges in question.'" *McWhorter v. Ocwen Loan Servicing, LLC*, No. 2:15-cv-01831-MHH, 2017 WL 3315375, at *7 (N.D. Ala. Aug. 3, 2017) (quoting *Newman v. Checkrite Cal., Inc.*, 912 F. Supp. 1354, 1368 (E.D. Cal. 1995)). In *McWhorter*, the court relied, without analysis or explanation, on earlier decisions of other courts, rather than the statutory text. *See id.* at *7 (citing authorities). In

particular, *McWhorter* relied upon *Tuttle v. Equifax Check*, 190 F.3d 9 (2d Cir. 1999).

The Second Circuit's use of that standard in *Tuttle*, however, was inconsistent with the plain language of the FDCPA. The court did not analyze the statutory language itself but, instead, relied upon FTC commentary from 1988 and simply assumed this was an accurate interpretation of "permitted by law." *Tuttle*, 190 F.3d at 13 (citing Staff Commentary on the FDCPA, 53 Fed. Reg. at 50,108). However, a federal regulatory body cannot rewrite the statute any more than a court can. *See, e.g.*, *Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 970 (11th Cir. 2016) (en banc) (explaining that the court does not "rewrite" statutes and "does not defer to an agency's interpretation of a statute when the text is clear"). Although the FTC correctly followed the statute in recognizing that the FDCPA permits "reasonably avoidable" fees (*see infra* Part III.B.2), it departed from the plain text in interpreting "permitted by law." The FTC's commentary equates "permitted by law" with "affirmatively authorized by state law." 53 Fed. Reg. at 50,108. But the FDCPA does not say that. The FDCPA says "permitted by law." 15 U.S.C. § 1692f(1). It is not logical to presume that Congress meant only state statutes when it referred to "law" without limitation. Thus, if a fee is permitted by any law, including federal law or state common law, the FDCPA does not prohibit it.

If Congress intended to limit "permitted by law" to a specific jurisdiction or type of law, it could and would have stated that it explicitly. It is not up to courts to take out an editor's pen. As a result, the statute means what it says: law of any kind may permit convenience fees.

**B.**    **Convenience fees are permitted by law.**

Convenience fees do not violate § 1692f(1) because they are "permitted by" both federal and state law. Two federal financial services statutes (the EFTA and TILA) permit these fees. Further, regulators' decisions to allow, and government entities' decisions to charge, convenience fees confirm this understanding. State law contractual principles do too, as the FTC has recognized. As a result, convenience fees are permitted by law and do not violate the FDCPA.

1.    Federal law permits convenience fees.

Federal law permits convenience fees. Two financial services statutes, the EFTA and TILA, both permit convenience fees.

The EFTA "provide[s] a basic framework establishing the rights, liabilities, and responsibilities" of "consumers, financial institutions, and intermediaries in

electronic fund transfers." 15 U.S.C. §§ 1693(a), (b). Contrary to what the District Court suggested (*Glover*, R-20-7; *Booze*, R-12-7), individual debtors fall within the definition of "consumer," which refers to a "natural person." 15 U.S.C. §§ 1693a(6). Further, the term "electronic fund transfer" includes transfers of funds through telephones and computers that "order, instruct, or authorize a financial institution to debit or credit an account." *Id.* § 1693a(7). That is precisely what Ocwen's expedited telephonic and electronic payment methods do, so they are electronic fund transfers. In prescribing the disclosures and consent required when an institution "charges for [these] electronic fund transfers or for the right to make such transfers," the EFTA necessarily authorizes an institution to charge fees for the transfer. *Id.* § 1693c(a)(4); *see also* 12 C.F.R. § 205.7(b)(5) (regulating disclosures for "fees imposed by the financial institution for electronic fund transfers or for the right to make transfers"); 12 C.F.R. § 1005.7(b)(5) (same). Thus, Ocwen may charge convenience fees for these electronic fund transfer methods.

TILA similarly authorizes Ocwen's convenience fees. TILA only prohibits open-ended, not home-secured, credit plans from charging convenience fees. *See* 15 U.S.C. § 1637(*l*); 12 C.F.R. § 226.10(e); 12 C.F.R. § 1026.10(e). Thus, home-secured, closed-ended credit plans are permitted to charge fees. Because Glover's and Booze's loans are home-secured, closed-ended credit plans, this exemption

applies and allows convenience fees. *See Kier v. Ocwen Loan Servicing, LLC*, 122 F. Supp. 3d 786, 790–91 (N.D. Ill. 2015) (TILA "does not . . . guarantee consumers the right to make online payments free of charge," so Ocwen's convenience fees do not violate TILA). And even for open-ended consumer credit plans, a creditor may impose a separate fee for a specific payment method that "involves an expedited service by a customer service representative of the creditor." 15 U.S.C. § 1637(*l*); 12 C.F.R. § 226.10(e); 12 C.F.R. § 1026.10(e).

The official interpretation of TILA also supports Ocwen charging these fees. This interpretation exempts from strict disclosure fees "charged for arranging a single payment on the credit account, upon the consumer's request . . . , if the credit plan provides that the consumer may make payments on the account by another reasonable means, such as by standard mail service, without paying a fee to the creditor." 12 C.F.R. Pt. 1026, Supp. I, Part 1, ¶6(a)(2).2.x; *see also Veale*, 85 F.3d at 579. Here, Ocwen offers a no-cost payment by standard mail service. *See* R-26- Ex. A ¶¶9–10, 12 & Ex. 8 (website disclosures advising borrowers of options to submit payment without a fee). Thus, the convenience fee charged for "arranging a single payment . . . upon the consumer's request" is permitted. *See* 12 C.F.R. Pt. 1026, Supp. I, Part 1, ¶ 6(a)(2).2.x.

Consistent with this, regulatory authorities have repeatedly entered into consent judgments allowing servicers to continue charging properly disclosed and agreed-to fees. Under Ocwen's 2014 National Mortgage Settlement with the CFPB, for example, Ocwen may assess a fee if (1) "it is not prohibited by law, this Agreement or the loan instruments" and (2) it is "a reasonable fee for a specific service requested by the borrower that is collected only after clear and conspicuous disclosure of the fee is made available to the borrower." Consent Judgment, *CFPB v. Ocwen Fin. Corp.*, No. 1:13-cv-2025, ECF No. 12-1 at A-39 (D.D.C. Feb. 26, 2014). Other consent decrees similarly allow mortgage servicers to continue charging convenience fees. *See, e.g.*, *FTC v. Green Tree Servicing LLC*, No. 15-cv-02064, ECF No. 5 (D. Minn. Apr. 23, 2015) (requiring increased disclosures but allowing the continuation of convenience fee charges); *United States v. Consumer Portfolio Servs., Inc.*, No. SACV14-00819, ECF No. 9 at 5–6 (C.D. Cal. June 11, 2014) (allowing a "reasonable fee" to be charged for a specific service after full disclosure of the fee is given and explicit consent from the consumer is obtained, as long as the fee "is not otherwise prohibited by law or the loan agreement or amendments thereto, and the service is actually rendered"); *FTC v. Countrywide Home Loans, Inc.*, No. 2:10-cv-04193, ECF No. 6 at 7 (C.D. Cal. June 15, 2010) (similar); *United States v. Select Portfolio Servicing, Inc.*, No. 03-12219-DPW, ECF

No. 96 at 9–10 (D. Mass. Sept. 6, 2007) (similar). Regulators' acceptance of these fees further confirms that they are permitted under federal law.

Likewise, the federal government itself recognizes that convenience fees are proper. The Veterans Administration recently surveyed mortgage servicers and found convenience fees ranging from $9 to $20 are "standard in private industry." Loan Guaranty Vendee Loan Fees, 81 Fed. Reg. 74,382, 74,385 (Oct. 26, 2016). As a result, the VA adopted its own regulation permitting convenience fees on vendee loans. 38 C.F.R. § 36.4529(a)(6)–(7). The VA may charge a borrower up to $12 "when a payment is made by phone and handled by a servicing representative" and up to $10 "when payment is made by phone and handled through an interactive voice response system, without contacting a servicing representative." *Id.* The VA would not have adopted such a regulation, based upon private industry's use of these fees, if it believed they were illegal.

## 2. Established Florida contract law permits convenience fees.

Florida law recognizes that a contract exists where a company offers a service and the consumer voluntarily accepts that service at a particular price after reviewing the essential terms for that agreement. *See Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) (citing *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381

(Fla. 2004)). So, Ocwen's disclosures to borrowers regarding convenience fees and borrowers' acceptance of those terms every single time they used the extra optional payment methods creates a valid contract. There is no question that Ocwen performed its side of the contract in each such transaction. Under ordinary contract principles, it is therefore entitled to the fee the customer expressly agreed to pay in exchange for using the service.

The FDCPA does not upend basic principles of contract. The FTC's official commentary acknowledges that the FDCPA does not prohibit debt collectors from assessing fees or charges that are "reasonably avoidable by the consumer." Staff Commentary on the FDCPA, 53 Fed. Reg. at 50,107. In fact, the FTC went out of its way to recognize that when a debt collector puts a consumer on notice that the customer's choice of payment method may result in fees, before the consumer is charged such a fee, charging that fee is not a violation of the FDCPA. *Id.* at 50,108. The FTC explains that no FDCPA violation occurs because the consumer has effectively entered a separate "agreement" to pay the fee. *Id.* This conclusion makes sense because the FDCPA does not deprive a borrower of freedom to contract for new services.

As the FTC's reasoning suggests, state contract law "permit[s]" avoidable convenience fees. 15 U.S.C. § 1692f(1). Nothing in the FDCPA prevents borrowers from voluntarily bargaining for separate services with their mortgage servicer. *See, e.g.*, *Turner*, 467 F. Supp. 3d at 1247 (holding that "a fee incurred in a separate agreement between the parties to ensure same-day posting and processing of [the plaintiff's] mortgage payments—an optional service that [the plaintiff] voluntarily incurred"—is not actionable under the FDCPA); *Meitzinger v. Sortis Holdings, Inc.*, No. 18-cv-2042, 2019 WL 1471338, at *2 (E.D.N.Y. Apr. 3, 2019) ("Nothing in the FDCPA requires the collection company to accept payments by telephone, and thus nothing prohibits it from offering to enter into a new contract with the debtor, *i.e.*, 'for $6, I will give you the added convenience of paying by phone.'"); *Flores*, 2015 WL 4254032, at *10 (permitting a fee where other free payment methods were offered and it was clearly explained a fee would be imposed "only upon those who sought to pay via [that method]").

Nonetheless, the CFPB recently issued guidance finding "no principle of contract law says debt collectors may collect pay-to-pay fees." CFPB, Advisory Opinion on Debt Collectors' Collection of Pay-to-Pay Fees (June 29, 2022). This nonsensical declaration ignores the most basic principle of contract law: two parties can choose to enter into agreements for new extra services in exchange for new

consideration even though neither is obligated to do so. The CFPB's revisionist view of contract law did not go through the notice-and comment process for rulemaking and so does not have the force of law. *See Kisor v. Wilkie*, 139 S. Ct. 2400, 2420 (2019). As explained below, the guidance is incorrect.

Contract law generally allows parties to contract to do anything that is not illegal so long as there is offer, acceptance, and consideration. These fees are not *per se* illegal. For example, Florida law permits state agencies to charge convenience fees for same-day payments made by phone or online. *See* FLA. STAT. § 215.322(3)(b); FLA. ADMIN. CODE § 69C-4.0045 ("Convenience Fees"). The CFPB cannot rewrite 250 years of American contract law with the stroke of its guidance pen. A borrower therefore is free to agree to pay a convenience fee in exchange for optional, expedited payment services that the borrower wants and the servicer isn't otherwise obligated to offer. These borrowers chose to do so only after receiving a contemporaneous disclosure regarding the fee and its optional nature and then affirmatively agreeing to pay the purchase price. In other words, Glover and Booze contracted to pay for an optional service they wanted. State law permits such contracts. Therefore, so does the FDCPA.

**IV.  Convenience fees support a valuable consumer service that the FDCPA is not intended to restrain.**

Nothing requires Ocwen to offer Glover, Booze, or any other consumer expedited online or telephonic payment options. Glover and Booze's loan agreements do not require these expedited options. *Glover,* R-73-2 & *Booze*, R-64-3. No federal or state law requires Ocwen to provide these options either. Nevertheless, Ocwen has chosen to allow borrowers like Glover and Booze the choice of making payments in expedited fashion online or by telephone in return for a convenience fee.

These additional payment options are valuable to borrowers. Congress recognized the value of convenient payment options in enacting the EFTA. 15 U.S.C. § 1693(a) ("[T]he use of electronic systems to transfer funds provides the potential for substantial benefits to consumers."). And many borrowers have affirmed the value of Ocwen's expedited payment services by choosing to use them despite the fee. Borrowers do so because the services are expedient. *See, e.g.*, *Campbell*, 467 F. Supp. 3d at 1265 (the borrower's "choice of payment [through Speedpay] allows an immediate processing of the payment, with no delay similar to what may exist if payment was made via regular mail"); *Turner*, 467 F. Supp. 3d at 1247 (the borrower "used PHH's optional Speedpay service to ensure same-day posting and processing of her mortgage payments"). These options offer immediate

processing, immediate posting to the account, and immediate confirmation of payment. As a result, these services enable a borrower to avoid higher late charges or negative credit reporting for payments that would otherwise be late. In some cases, they may help the borrower avoid commencement of foreclosure for extended delinquencies of 90 days or more.

If mortgage servicers are not permitted to charge for convenient payment services, they have every right to stop offering them. And some will. These services do have both internal and external costs, as Congress recognized in allowing creditors to charge various fees where a customer service representative is involved. 15 U.S.C. § 1637(*l*); 12 C.F.R. § 226.10(e); 12 C.F.R. § 1026.10(e). Thus, if servicers are not allowed to charge a fee for additional services requested by a borrower, they have no reason to expend the resources to offer those services. Depriving borrowers of this option would be anti-consumer and contrary to the purposes of the FDCPA. *See, e.g.*, *Flores*, 2015 WL 4254032, at *10 ("Discouraging debt collectors from offering the additional option for a method of payment does not further the purposes of the FDCPA, and it would seem unfair or inconvenient to many debtors to be deprived of the opportunity to pay by credit card as a result of ban on an opt-in fee to cover costs.").

## CONCLUSION

The District Court erred in granting judgment in favor of Glover and Booze. Ocwen's convenience fees are not a debt or incidental to a debt and thus are not prohibited. Further, assessment of convenience fees does not occur in collecting a debt, so the FDCPA does not regulate these charges. Finally, convenience fees are "permitted by law." For all of these reasons, voluntary convenience payments do not violate the FDCPA. The judgments should be reversed.

Respectfully submitted,

_/s/ Scott Burnett Smith_
Scott Burnett Smith

Attorney for Appellee
Ocwen Loan Servicing, LLC

**OF COUNSEL:**

Michael R. Pennington
BRADLEY ARANT BOULT CUMMINGS LLP
1819 5th Avenue North
Birmingham, Alabama 35203
(205) 521-8391
mpennington@bradley.com

Kimberly M. Ingram-Hogan
BRADLEY ARANT BOULT CUMMINGS LLP
1221 Broadway, Suite 2400
Nashville, TN 37203
(615) 252-3592
kingram@bradley.com

**CERTIFICATE OF COMPLIANCE**

Pursuant to Rule 32(g) of the Federal Rules of Appellate Procedure, the undersigned counsel certifies that this brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure. This brief contains 8,363 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and 11th Circuit Rule 32-4.

This brief complies with the typeface requirements of Rule 32(a)(5) of the Federal Rules of Appellate Procedure and the type style requirements of Rule 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman, font size 14.

*/s/ Scott Burnett Smith*
OF COUNSEL

**CERTIFICATE OF SERVICE**

I hereby certify that on December 19, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

James Lawrence Kauffman
Bailey & Glasser, LLP
1055 Thomas Jefferson St NW
Suite 540
Washington, DC 20007

Leslie A. Brueckner
Bailey Glasser LLP
1999 Harrison Street
Suite 660
Oakland, CA 94612

Young Kim
Consumer Law Attorneys
2727 Ulmerton Road
Suite 270
Clearwater, FL 33762

*/s/ Scott Burnett Smith*
OF COUNSEL

# STATUTORY APPENDIX

# 15 U.S.C. § 1692a
## § 1692a. Definitions

As used in this subchapter—

**(1)** The term "Bureau" means the Bureau of Consumer Financial Protection.

**(2)** The term "communication" means the conveying of information regarding a debt directly or indirectly to any person through any medium.

**(3)** The term "consumer" means any natural person obligated or allegedly obligated to pay any debt.

**(4)** The term "creditor" means any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another.

**(5)** The term "debt" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

**(6)** The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests. The term does not include—

> **(A)** any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor;

> **(B)** any person while acting as a debt collector for another person, both of whom are related by common ownership or affiliated by corporate control, if the person acting as a debt collector does so only for persons to

whom it is so related or affiliated and if the principal business of such person is not the collection of debts;

    **(C)** any officer or employee of the United States or any State to the extent that collecting or attempting to collect any debt is in the performance of his official duties;

    **(D)** any person while serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt;

    **(E)** any nonprofit organization which, at the request of consumers, performs bona fide consumer credit counseling and assists consumers in the liquidation of their debts by receiving payments from such consumers and distributing such amounts to creditors; and

    **(F)** any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

  **(7)** The term "location information" means a consumer's place of abode and his telephone number at such place, or his place of employment.

  **(8)** The term "State" means any State, territory, or possession of the United States, the District of Columbia, the Commonwealth of Puerto Rico, or any political subdivision of any of the foregoing.

**15 U.S.C. § 1692f**
**§ 1692f. Unfair practices**

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

**(1)** The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

**(2)** The acceptance by a debt collector from any person of a check or other payment instrument postdated by more than five days unless such person is notified in writing of the debt collector's intent to deposit such check or instrument not more than ten nor less than three business days prior to such deposit.

**(3)** The solicitation by a debt collector of any postdated check or other postdated payment instrument for the purpose of threatening or instituting criminal prosecution.

**(4)** Depositing or threatening to deposit any postdated check or other postdated payment instrument prior to the date on such check or instrument.

**(5)** Causing charges to be made to any person for communications by concealment of the true purpose of the communication. Such charges include, but are not limited to, collect telephone calls and telegram fees.

**(6)** Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if--

    **(A)** there is no present right to possession of the property claimed as collateral through an enforceable security interest;

    **(B)** there is no present intention to take possession of the property; or

    **(C)** the property is exempt by law from such dispossession or disablement.

**(7)** Communicating with a consumer regarding a debt by post card.

**(8)** Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.