NOS. 23-12578, 23-12579

UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

Sheryl Glover and Cathy Booze,

*Plaintiffs-Appellees*,

*v.*

Ocwen Loan Servicing, LLC,

*Defendant-Appellant*.

On Appeal from the United States District Court
for the Southern District of Florida

Case Nos. 9:20-cv-80053, 9:20-cv-80135

Hon. Donald M. Middlebrooks

**Brief of *Amici Curiae*
Consumer Financial Protection Bureau and
Federal Trade Commission
in Support of Plaintiffs-Appellees**

Anisha Dasgupta
   *General Counsel*
Mariel Goetz
   *Acting Deputy General Counsel*
Federal Trade Commission
600 Pennsylvania Avenue, NW
Washington, D.C. 20580
(202) 326-2763 (telephone)
mgoetz@ftc.gov

Seth Frotman
   *General Counsel*
Steven Y. Bressler
   *Deputy General Counsel*
Kristin L. Bateman
   *Assistant General Counsel*
Joseph Frisone
   *Senior Counsel*
Consumer Financial Protection
   Bureau
1700 G Street, NW
Washington, D.C. 20552
(202) 435-9287 (telephone)
Joseph.Frisone@cfpb.gov

**CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT**

Pursuant to 11th Cir. Rule 26.1, counsel for *amici curiae* the Consumer

Financial Protection Bureau (CFPB) and the Federal Trade Commission (FTC)

certify that the following additional persons and entities have an interest in the

outcome of these appeals:

Bateman, Kristin, CFPB

Bressler, Steven Y., CFPB

Consumer Financial Protection Bureau

Dasgupta, Anisha, FTC

Federal Trade Commission

Frisone, Joseph, CFPB

Frotman, Seth, CFPB

Goetz, Mariel, FTC

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................i

TABLE OF AUTHORITIES ........................................................iii

INTEREST OF AMICI...............................................................1

STATEMENT ..............................................................................1

    A.    Statutory and Regulatory Background ..............................1

    B.    Pay-to-Pay Fees................................................................4

    C.    Facts and Procedural History ...........................................5

SUMMARY OF ARGUMENT ......................................................6

ARGUMENT .............................................................................10

I.   Section 1692f(1) applies to debt collectors' collection of pay-to-pay fees. ...................................................................................11

    A.    Pay-to-pay fees are amounts covered by Section 1692f(1). ...........12

    B.    Debt collectors "collect" pay-to-pay fees. ....................................16

II.  The pay-to-pay fees are not "permitted by law.".....................................18

    A.    Contract law does not "permit" pay-to-pay fees within the meaning of Section 1692f(1)........................................................................19

        1.    Interpreting "permitted by law" to mean "permitted by any valid contract" is inconsistent with the text of Section 1692f(1)..............19

        2.    An "amount" is "permitted by law" under Section 1692f(1) only if a law affirmatively authorizes it…………………………………..21

    B.    Neither the Electronic Fund Transfer Act nor the Truth in Lending Act authorizes pay-to-pay fees. ....................................................24

III. Limiting debt collectors' collection of pay-to-pay fees provides consumers important protections. ............................................................ 25

CONCLUSION ............................................................................................... 28

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page(s)**

*Alexander v. Carrington Mortg. Servs., LLC*,
    23 F.4th 370 (4th Cir. 2022) ............................................................. 14, 15, 22, 23

*Ali v. Fed. Bureau of Prisons*,
    552 U.S. 214 (2008) ........................................................................................12

*Bautista v. Star Cruises*,
    396 F.3d 1289 (11th Cir. 2005) ......................................................................14

*Campbell v. Universal City Dev. Partners, Ltd.*,
    72 F.4th 1245 (11th Cir. 2023) ......................................................................20

*Duncan v. Asset Recovery Specialists, Inc.*,
    907 F.3d 1016 (7th Cir. 2018) .......................................................................18

*Edison v. Douberly*,
    604 F.3d 1307 (11th Cir. 2010) .....................................................................16

*Fed. Land Bank of St. Paul v. Bismarck Lumber Co.*,
    314 U.S. 95 (1941) ........................................................................................13

*Harris v. Liberty Cmty. Mgmt., Inc.*,
    702 F.3d 1298 (11th Cir. 2012) .....................................................................15

*Hincapie-Zapata v. United States Att'y Gen.*,
    977 F.3d 1197 (11th Cir. 2020) .....................................................................13

*Johnson v. Riddle*,
    305 F.3d 1107 (10th Cir. 2002) .....................................................................21

*Nadalin v. Auto. Recovery Bureau, Inc.*,
    169 F.3d 1084 (7th Cir. 1999) .......................................................................18

*Ray v. McCullough Payne & Haan, LLC*,
    838 F.3d 1107 (11th Cir. 2016) .......................................................................2

*Seeger v. AFNI, Inc.*,
    548 F.3d 1107 (7th Cir. 2008) .......................................................................23

*Tuttle v. Equifax Check*,
190 F.3d 9 (2d Cir. 1999) ......................................................................23

*Veale v. Citibank, F.S.B.*,
85 F.3d 577 (11th Cir. 1996) ................................................................16

**Statutes**

15 U.S.C. § 1637(*l*) ...............................................................................24

15 U.S.C. § 1692(a) ..................................................................................1

15 U.S.C. § 1692(b) ................................................................................22

15 U.S.C. § 1692a(5) ..............................................................................17

15 U.S.C. § 1692a(6) ..................................................................... 8, 17, 18

15 U.S.C. § 1692f.......................................................................................2

15 U.S.C. § 1692f(1) ......................................... 2, 6, 10, 11, 13, 18

15 U.S.C. § 1692f(6) ...............................................................................18

15 U.S.C. § 1692*l*(b), (d) ........................................................................1

15 U.S.C. § 1692*l*(a) ............................................................................2, 23

15 U.S.C. § 1692*l*(d) ................................................................................3

15 U.S.C. § 1693c(a)(4) ..........................................................................24

An Act to amend the Consumer Credit Protection Act to prohibit
abusive practices by debt collectors,
Pub. L. No. 95-109, 91 Stat. 874 (1977) ................................................1

Dodd-Frank Wall Street Reform and Consumer Protection Act,
Pub. L. No. 111-203, 124 Stat. 1376 (2010) ..........................................3

**Regulations**

12 C.F.R. pt. 1026, Supp. I ¶ 6(a)(2)-2.x ..............................................25

12 C.F.R. § 1005.7(b)(5)..........................................................................24

12 C.F.R. § 1006.22(b) ........................................................................3

Debt Collection Practices (Regulation F); Pay-to-Pay Fees, Advisory Opinion,
    87 Fed. Reg. 39733 (July 5, 2022) ................................................2, 24

Statement of General Policy or Interpretation Staff Commentary On the
    Fair Debt Collection Practices Act,
    53 Fed. Reg. 50097 (Dec. 13, 1988) ............................................ 3, 23

Truth in Lending, Final Rule,
    61 Fed. Reg. 49237 (Sept. 19, 1996)..................................................16

## Other Authorities

*Cambridge Dictionary*,
    https://dictionary.cambridge.org/us/dictionary/english/amount
    (last visited Feb. 20, 2024) ..............................................................12

Association for Finance Professionals, *Payments Cost Benchmarking Survey*
    (2015), https://www.afponline.org/docs/default-source/default-document-
    library/pub/2015-payments-cost-benchmarking-report ........................5

*Black's Law Dictionary* (5th ed. 1979)........................................... 16, 21

*Black's Law Dictionary* (11th ed. 2019)................................................14

*Collins English Dictionary* (12th ed. 2014)...........................................14

*Oxford English Dictionary*,
    https://www.oed.com/dictionary/collect_v (last visited Feb. 21, 2024) ..............16

*New Shorter English Oxford Dictionary* (1993)......................................15

Restatement (Second) of Contracts § 4 (1981)........................................20

S. Rep. No. 95-382 (1977) ...................................................... 1, 22, 25, 26

*Webster's Third New International Dictionary* (1976) ...........................21

# INTEREST OF AMICI

The Consumer Financial Protection Bureau (CFPB or Bureau) and the Federal Trade Commission (FTC) file this brief pursuant to F.R.A.P. 29(a)(2).

This case concerns a provision of the Fair Debt Collection Practices Act (FDCPA), a law for which each agency exercises important responsibilities. Congress vested the CFPB with authority to enforce the FDCPA and to prescribe rules implementing the Act. 15 U.S.C. § 1692*l*(b), (d). The FTC similarly has authority to enforce the FDCPA—authority it has exercised since the statute's enactment in 1977, *see* Pub. L. No. 95-109, § 814, 91 Stat. 874, 881-82 (1977). Both agencies accordingly have a substantial interest in the issues in this case.

# STATEMENT

## A. Statutory and Regulatory Background

1. Congress enacted the FDCPA in 1977 in response to "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." Pub. L. No. 95-109, § 802(a), 91 Stat. 874, 874 (codified at 15 U.S.C. § 1692(a)). Debt collectors had few incentives to treat consumers fairly because, as legislators observed, they "are likely to have no future contact with the consumer and often are unconcerned with the consumer's opinion of them." S. Rep. No. 95-382, at 2 (1977).

To address "widespread" problems in debt collection, Congress imposed various restrictions on debt collectors' debt collection activity. Relevant here is Section 1692f, which provides that a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. The provision then, "[w]ithout limiting the general application of the" general prohibition, enumerates specific conduct that violates that prohibition, including the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *Id*. § 1692f(1).

2. From the time of the FDCPA's enactment until Congress created the CFPB in 2010, the FTC administered, and had primary responsibility for enforcing, the FDCPA. *See id.* § 1692*l*(a) (2010). FTC staff issued Commentary that set forth "staff interpretations" of the FDCPA. *See* 53 Fed. Reg. 50097, 50101 (Dec. 13, 1988). Although the Staff Commentary is "not binding on the Commission or the public," this Court has looked to it for guidance. *See, e.g.*, *Ray v. McCullough Payne & Haan, LLC*, 838 F.3d 1107, 1112 (11th Cir. 2016). As relevant here, the Commentary states that, under Section 1692f(1), a "debt collector may attempt to collect a fee or charge in addition to the debt if … the contract [creating the debt] is silent but the charge is otherwise expressly permitted by state law." 53 Fed. Reg. at 50108. Conversely, the Commentary states that "a

debt collector may not collect an additional amount if … the contract does not provide for collection of the amount and state law is silent." *Id.*

3. In 2010, Congress passed the Dodd-Frank Wall Street Reform and Consumer Protection Act, which created the CFPB and granted it authority to write rules implementing the FDCPA. Pub. L. No. 111-203, § 1089, 124 Stat. 1376, 2093 (codified at 15 U.S.C. § 1692*l*(d)). Rules implementing the Act reiterate Section 1692f(1)'s command that "[a] debt collector must not collect any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 12 C.F.R. § 1006.22(b). The rules further state that, for purposes of that provision, "the term 'any amount' includes any interest, fee, charge, or expense incidental to the principal obligation." *Id.*

In 2022, the Bureau issued an advisory opinion interpreting Section 1692f(1) and explaining how that provision applies to debt collectors' collection of so-called "convenience" or "pay-to-pay" fees—charges imposed on consumers to make payments through a particular channel, such as online or by phone. 87 Fed. Reg. 39733 (July 5, 2022). The advisory opinion interprets Section 1692f(1) to apply to "any amount," regardless of whether such amount is considered "incidental" to the principal obligation, and notes that pay-to-pay fees are incidental to the principal obligation in any event. *Id.* at 39734 & n.19. The advisory opinion also interprets

Section 1692f(1)'s "permitted by law" prong to require affirmative authorization. *Id*. at 39734.

## B. Pay-to-Pay Fees

While companies generally allow consumers to make payments in person or by mail for free, some charge a "convenience" or "pay-to-pay" fee for online and phone payments. But most do not. According to the Bureau's market understanding, most third-party debt collectors allow consumers to repay their debts by phone or online, and most of those collectors do not impose any additional fees for such payments. That makes sense given that it is generally cheaper and easier for collectors to process phone and online payments than paper-check payments delivered by mail or in person.

Still, some collectors impose fees for online and phone payments, often relying on third-party payment processors to process those payments. Frequently, the fees these debt collectors charge consumers are substantially higher than the price debt collectors pay third parties for the service. According to the Bureau's market understanding, while debt collectors typically charge consumers pay-to-pay fees of between $4 and $12, debt collectors typically pay third-party processors

only $0.50 or less per transaction.[1] By contrast, processing paper checks can cost collectors up to $4 per check.[2]

## C. Facts and Procedural History

Defendant-appellant Ocwen Loan Servicing began servicing plaintiffs-appellees' mortgages after the plaintiffs were in default.[3] The mortgage agreements did not authorize fees for making payments by phone or online. Nonetheless, Ocwen charged the plaintiffs a "convenience" fee—ranging from $7.50 to $12— for such payments. A payment processor processed those payments for Ocwen and retained only $0.40 of each fee. Plaintiff-appellee Sheryl Glover paid a "convenience" fee 26 times, while plaintiff-appellee Cathy Booze paid the fee 10 times.

Plaintiffs filed nearly identical actions alleging that Ocwen violated Section 1692f(1) by charging these fees. Ocwen moved to dismiss both cases on the

---

[1] This estimate of the debt collectors' costs in initiating and receiving ACH (Automated Clearing House) transfers—the most common type of payment made by phone or online—is consistent with estimates from industry professionals. *See, e.g.*, Association for Finance Professionals, *Payments Cost Benchmarking Survey*, at 8 (2015) (finding median cost range for sending and receiving ACH payments is between $0.37 and $0.75), *available at* https://www.afponline.org/docs/default-source/default-document-library/pub/2015-payments-cost-benchmarking-report.

[2] *See id.* at 7.

[3] The facts here are drawn from the parties' stipulated facts submitted in the district court. *See* Appx. at 235, 658.

ground that Section 1692f(1) did not prohibit its collection of pay-to-pay fees for various reasons. The district court disagreed and denied those motions. The parties then submitted both cases for judgment on stipulated facts, and the court entered judgment for each plaintiff. Ocwen appealed, and this Court consolidated the two cases.

## SUMMARY OF ARGUMENT

The FDCPA prohibits debt collectors from "collect[ing] … any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). Consumers cannot choose their debt collector and cannot take their business elsewhere if they dislike a collector's practices. This provision ensures that collectors cannot take advantage of their captive audience by charging fees that a consumer did not bargain for upfront—when she could still shop around—unless some law affirmatively authorizes them. Consistent with how courts and regulators have long interpreted Section 1692f(1), this provision applies to pay-to-pay fees, and no law permitted their collection here.

1. Section 1692f(1) applies to debt collectors collecting pay-to-pay fees when they collect or attempt to collect a "debt" covered by the FDCPA.

a. Pay-to-pay fees straightforwardly fit within the provision's broad coverage of "any amount." And those fees fall within Section 1692f's general scope because they are a means of collecting a debt: They are a fee charged for paying the debt through a particular channel.

Contrary to Ocwen's contention, Section 1692f(1) is not limited to amounts "incidental to" the underlying debt. The provision explicitly states—in a parenthetical describing "any amount"—that covered amounts "*includ[e]* any interest, fee, charge, or expense incidental to the principal obligation." (Emphasis added.) The term "including" indicates that the parenthetical is a list of examples and not everything that is covered. That does not mean that the parenthetical in Section 1692f(1) is superfluous; it merely highlights a subset of the "amounts" that are covered. Indeed, it is Ocwen's reading that produces superfluity: If "amounts" were limited to the examples in the parenthetical, the word "including" would be superfluous.

In any event, pay-to-pay fees are "incidental to the principal obligation" because they are "related" and "subordinate" to the principal obligation. If the principal obligation—the underlying mortgage debt—did not exist, then neither would the pay-to-pay fees. Ocwen's contrary claim that a fee is "incidental" only if it is automatically imposed has no textual support and defies common sense: That

would mean debt collectors could collect unauthorized late fees with impunity because those fees arise only if the consumer chooses to pay late.

b. Section 1692f(1) also applies to pay-to-pay fees because, contrary to Ocwen's contention, a collector "collects" such fees. To "collect" means to receive money—something debt collectors undeniably do when they receive pay-to-pay fees. Ocwen's claim that a debt collector "collects" an amount only when the collector demands payment for a fee allegedly owed ignores the plain meaning of "collect." While collecting a *debt* typically involves a demand for an amount allegedly owed, that is because a "debt" is owed. But Section 1692f(1) applies to the collection of any *amount*, not just debts. Nor does "collection" imply that the amount is collected for someone else. The FDCPA itself recognizes that a person can "collect[] his own debts," 15 U.S.C. § 1692a(6).

Pay-to-pay fees are thus covered by Section 1692f(1).

2. Further, the pay-to-pay fees here are not "permitted by law" because neither contract law nor the two federal statutes Ocwen invokes affirmatively authorize Ocwen to collect pay-to-pay fees.

a. Contract law does not "permit" pay-to-pay fees within the meaning of Section 1692f(1). An amount is "permitted by law" within the meaning of Section 1692f(1) only when a law affirmatively authorizes that amount; it is not enough to be authorized by a contract that is valid under general principles of contract law.

Indeed, if any valid contract were enough, collectors would be free to offer unfair terms to consumers who cannot seek a better deal elsewhere. More to the point, understanding a valid contract to satisfy Section 1692f(1)'s "permitted by law" prong cannot be squared with the text of the provision. For one, such a reading would disregard Section 1692f(1)'s careful delineation of the first category of collectible fees—those "*expressly* authorized by *the agreement creating the debt.*" If any valid agreement explicitly or implicitly authorizing some amount would do, then there would be no point in Congress specifically identifying amounts that are "expressly" authorized by the agreement "creating the debt"— thereby rendering that prong superfluous. Second, Section 1692f(1) requires the "amount" to be "permitted by law"; it is not enough for the amount to be permitted by an agreement that is in turn permitted by law.

"Permitted by law" under Section 1692f(1) can thus only refer to amounts that are affirmatively authorized by law, as courts and regulators have long agreed. That, of course, is consistent with a common meaning of "permit." And while "permit" can in some contexts also mean to allow something by not preventing it, that meaning does not make sense in the context of Section 1692f(1) and the FDCPA's history. That provision authorizes debt collectors to collect amounts "permitted *by law*," and it is hardly natural to read that to mean "not prohibited by law." Further, Congress enacted the FDCPA because of a lack of existing debt

9

collection laws protecting consumers, and thus it is unlikely that Congress intended to allow collectors to collect an amount so long as no other law prohibited it.

b. The two federal statutes that Ocwen invokes also do not authorize pay-to-pay fees. None provides any affirmative authorization for anyone to collect pay-to-pay fees, let alone for debt collectors to do so when the FDCPA would prohibit it.

3. Finally, understanding Section 1692f(1) to limit pay-to-pay fees in debt collection is consistent with the FDCPA's consumer-protection purposes. The FDCPA was designed to protect consumers in a context where they cannot choose their collector and collectors accordingly have limited incentives to treat them fairly. Section 1692f(1) ensures that collectors cannot impose additional fees that consumers did not agree to upfront—when they had a choice—unless some law affirmatively permits it. And understanding Section 1692f(1) in that way is not likely to lead collectors to stop giving consumers the option to make phone and online payments. After all, it is generally cheaper and easier for collectors to accept payment by phone or online than to accept payment by mail (which is typically the fee-free option).

## ARGUMENT

The FDCPA prohibits debt collectors from "us[ing] unfair or unconscionable means to collect or attempt to collect any debt," including by "collect[ing] … any amount (including any interest, fee, charge, or expense incidental to the principal

obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). This provision ensures that debt collectors may collect amounts in two circumstances only: (1) where the consumer agreed to it upfront when she first incurred the debt or (2) when a law permits a collector to impose a charge later. When it comes to "convenience fees," this rule ensures that debt collectors cannot take advantage of their position to impose fees on consumers who cannot choose their debt collector and thus have no option to find a better deal elsewhere. Absent authorization in the underlying agreement or in some law, Section 1692f(1) prohibits debt collectors from collecting "convenience" fees from consumers.

Ocwen contends otherwise, claiming that (1) Section 1692f(1) does not apply to pay-to-pay fees at all and (2) regardless, those fees are permitted by law. Ocwen is mistaken on both fronts.

## I.  Section 1692f(1) applies to debt collectors' collection of pay-to-pay fees.

By its plain terms, Section 1692f(1) prohibits debt collectors from collecting "any amount" except in two specified circumstances. This prohibition applies to debt collectors collecting pay-to-pay fees when they collect or attempt to collect a "debt" covered by the FDCPA. Pay-to-pay fees are amounts covered by the provision, and a debt collector "collects" those fees when it receives them from a debtor.

**A. Pay-to-pay fees are amounts covered by Section 1692f(1).**

Pay-to-pay fees are covered by Section 1692f(1)'s limitation on collecting "amounts." The term "amount" is commonly understood as a "quantity of money." *Cambridge Dictionary*, https://dictionary.cambridge.org/us/dictionary/english/amount (last visited February 20, 2024). Section 1692f(1) also makes clear that it applies to the collection of "*any* amount" in the course of collecting a debt. The "word 'any' has an expansive meaning, that is, one or some indiscriminately of whatever kind." *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 219 (2008) (quotations omitted)). Thus, Congress's "use of 'any' to modify" the term "amount" "is most naturally read to mean [amounts] of whatever kind." *Id*. at 220. Pay-to-pay fees thus plainly qualify as "any amount."

To be sure, the "amount" must be related to the collection of the debt. Section 1692f makes it unlawful for a collector to "use unfair or unconscionable means to collect or attempt to collect any debt," so Section 1692f(1) applies when a collector collects "any amount" as a means of collecting a debt. Collecting a convenience fee is a means of collecting a debt—a collector imposes such a fee to accept payment of a debt through a particular channel. If a collector engaged in a truly separate transaction with a consumer unrelated to its collection of a debt, then Section 1692f(1) would not apply to the amounts collected in that transaction. But

collecting fees for paying a debt a particular way is a means of collecting that debt and is therefore covered by Section 1692f(1).

Ocwen nonetheless contends that Section 1692f(1) does not cover pay-to-pay fees because the provision applies only to amounts that are either debts themselves or "incidental to the debt," and that pay-to-pay fees are neither. (Br. at 14.) That is mistaken.

1. Section 1692f(1) prohibits collection of "any" unauthorized "amount," regardless of whether the amount is "incidental to" the underlying debt (or a "debt" itself).[4] The provision applies to "any amounts" and then explicitly states in a parenthetical that this "*includ[es]* any interest, fee, charge, or expense incidental to the principal obligation." 15 U.S.C. § 1692f(1) (emphasis added). As this Court has explained, the term "including" "introduces examples" but "does not list everything that qualifies." *Hincapie-Zapata v. United States Att'y Gen.*, 977 F.3d 1197, 1201-02 (11th Cir. 2020). The Supreme Court likewise has explained that the term "including" does not signal an "all-embracing definition" but rather an "illustrative application of the general principle." *Fed. Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95, 100 (1941). Here, that means that "interest,

---

[4] Of course, most any amount collected as a means of collecting a debt will also be "incidental" to the debt under a proper understanding of "incidental."

fee, charge or expense incidental to the principal obligation" are examples of "amount[s]," and not the *only* amounts that are covered.

That reading, moreover, does not render the parenthetical language following "any amount" superfluous, as Ocwen argues (at 16). The parenthetical provides illustrative examples of what the prohibited amounts "include." That Congress chose to highlight a subset of amounts does not limit the scope of "any amount." The Fourth Circuit recently made this exact point: "The FDCPA's far-reaching language straightforwardly applies to the collection of 'any amount'" and while "convenience fees are not explicitly enumerated, Congress certainly did not want debt collectors to skirt statutory prohibitions through linguistic sophistry." *Alexander v. Carrington Mortg. Servs., LLC*, 23 F.4th 370, 377 (4th Cir. 2022). Indeed, it would be "the expansive term 'including' [that] would be superfluous if [what followed] provided the full and complete definition." *Bautista v. Star Cruises*, 396 F.3d 1289, 1298 (11th Cir. 2005). Pay-to-pay fees are therefore covered by Section 1692f(1) regardless of whether they are considered "incidental to the principal obligation."

2. In any event, pay-to-pay fees are "incidental to" the principal obligation. "Incidental" is ordinarily understood as "related to," *Collins English Dictionary* (12th ed. 2014), or "[s]ubordinate to something of greater importance," *Black's Law Dictionary* (11th ed. 2019). Similarly, as this Court remarked in construing a

different FDCPA provision, the word "'incidental' in common parlance means 'occurring as something casual or of secondary importance.'" *Harris v. Liberty Cmty. Mgmt., Inc.*, 702 F.3d 1298, 1302 (11th Cir. 2012) (citation omitted).

Pay-to-pay fees meet those definitions: They are "related" and "of secondary importance" to the principal obligation because they are fees charged for paying the principal obligation. As the Fourth Circuit stated, it is "hard" to "see[] how the convenience fee is not incidental to the debt. Without the mortgage payment, there is of course no convenience fee." *Alexander*, 23 F.4th at 377 n.2.

Ocwen nonetheless argues that pay-to-pay fees are not "incidental" because they do not "naturally attach[] to" the principal obligation; rather, consumers pay the fees only if they choose to pay online or by phone. (Br. at 19 (citing *New Shorter English Oxford Dictionary* (1993))). But pay-to-pay fees *do* naturally attach to the principal obligation—they are a fee for paying that obligation. Contrary to Ocwen's apparent view, "naturally" attaching to something is not the same as "automatically" attaching to it. For instance, "incidental" charges at a hotel include room service fees even though they are not automatically imposed. And Ocwen's apparent view that only automatic fees are "incidental" cannot be what the statute means. Under that reading, late fees, for example, would not be "incidental" to the debt—and Section 1692f(1) would not prohibit debt collectors

from charging them without authorization—because late fees are not automatic, but rather are imposed only if the consumer chooses to pay late.[5]

For these reasons, pay-to-pay fees are "amounts" covered by Section 1692f(1).

**B. Debt collectors "collect" pay-to-pay fees.**

Debt collectors also "collect" pay-to-pay fees within the meaning of Section 1692f(1). The word "collect" is commonly understood as "to receive money." *Oxford English Dictionary*, https://www.oed.com/dictionary/collect_v (last visited February 21, 2024); *cf. Black's Law Dictionary* 238 (5th ed. 1979) (stating that to "collect a debt" is to "obtain payment" on it). A debt collector straightforwardly receives money when a debtor pays it a fee.

---

[5] Nor does Ocwen's reading find support in *Veale v. Citibank, F.S.B.*, 85 F.3d 577 (11th Cir. 1996). There, the Court held that the Truth in Lending Act did not require an optional fee to be included in the disclosed finance charge for a loan because that fee was not "imposed … by the creditor as an incident to the extension of credit." *Id.* at 579. But whether an optional charge is "imposed …incident to" credit for purposes of TILA's disclosure requirements has little bearing on whether an optional charge is an "incidental" amount that a debt collector "collect[s]" for purposes of the FDCPA's prohibition on collecting unauthorized amounts. Words are not interpreted "in isolation" but rather with reference to "the entire statute and its context." *Edison v. Douberly*, 604 F.3d 1307, 1310 (11th Cir. 2010). As explained above, "incidental" in Section 1692f(1) is best understood as referring to all amounts related and subordinate to the principal obligation. (Moreover, following *Veale*, the Federal Reserve Board amended the regulation implementing TILA to clarify that some "voluntary charges" may be considered imposed by a creditor as an incident to the extension of credit. 61 Fed. Reg. 49237, 49239 (Sept. 19, 1996).)

Ocwen proposes limiting the meaning of "collect" in two ways, but neither limitation has any textual support. First, Ocwen claims that "'[c]ollection' in the debt collection context is commonly understood as being preceded by a demand for a fee allegedly owed." (Br. at 22 (citation omitted).) That is beside the point. Collecting *a debt* commonly involves a "demand" for an amount that is "allegedly owed" because a *debt* is an amount that is allegedly owed. *See* 15 U.S.C. § 1692a(5). But Section 1692f(1) applies to the collection of "any amount" in the course of collecting a debt, not just to the collection of debts themselves. Under the ordinary meaning of "collect," a party "collects" an amount when it receives payment of it—regardless of whether the party demanded payment or claimed that the payment was owed.

Ocwen's second claim—that a debt collector "collects" an amount only when it collects that amount for someone else—is likewise baseless. (Br. at 24-25.) Ocwen attempts to rely on the Act's definition of "debt collector," which covers (among others) those who "regularly collect[] or attempt[] to collect … debts owed or due or asserted to be owed or due *another*." 15 U.S.C. § 1692a(6) (emphasis added). But that provision defines "debt collectors" subject to the Act, not what counts as "collection" (and it is undisputed that Ocwen is a "debt collector" under

the Act when collecting on defaulted mortgage loans like plaintiffs').[6] In fact, the

definition of "debt collector" clearly contemplates that a party can "collect"

amounts for itself: It specifies that "debt collector" includes "any creditor" who

uses a different name "in the process of *collecting his own debts*." *Id.* (emphasis

added).[7]

Thus, when a collector receives a pay-to-pay fee from a debtor, it "collects"

an "amount" within the meaning of Section 1692f(1).

## II. The pay-to-pay fees are not "permitted by law."

Because Section 1692f(1) applies to a debt collector's collection of pay-to-

pay fees, a debt collector violates that provision unless the fees were "expressly

authorized by the agreement creating the debt or permitted by law." 15 U.S.C.

§ 1692f(1). Ocwen does not claim that the underlying mortgage agreement

expressly authorized pay-to-pay fees, so the question here is whether those fees are

---

[6] Ocwen asserts in a header, with no further explanation, that it does not "act as a 'debt collector' with respect to" pay-to-pay fees. (Br. at 24.) That confuses the issues. Ocwen undisputedly acts as a "debt collector" when it collects on the underlying mortgage loans, and Section 1692f(1) applies to its collection of pay-to-pay fees for that reason.

[7] The two cases on which Ocwen primarily relies do not support its position. Those cases address whether repossession agents violated a different prohibition that bars "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property" in certain circumstances, 15 U.S.C. § 1692f(6). *See Duncan v. Asset Recovery Specialists, Inc.*, 907 F.3d 1016 (7th Cir. 2018); *Nadalin v. Auto. Recovery Bureau, Inc.*, 169 F.3d 1084, 1086 (7th Cir. 1999). They do not address Section 1692f(1) or the meaning of "collect."

"permitted by law." They are not. Neither contract law nor the two federal statutes Ocwen invokes "permit[]" pay-to-pay fees within the meaning of Section 1692f(1).

## A. Contract law does not "permit" pay-to-pay fees within the meaning of Section 1692f(1).

An amount is "permitted by law" within the meaning of Section 1692f(1) only when a law affirmatively authorizes that amount; it is not enough that a valid contract authorizes it. Indeed, if any valid contract were enough, that would leave collectors free to offer unfair terms to captive consumers who have no ability to shop around for a better deal. Understanding a fee to be "permitted by law" whenever permitted by a valid contract would conflict with Section 1692f(1)'s text. Rather, Section 1692f(1) should be interpreted to permit an amount only when a law affirmatively authorizes it, as courts and regulators have long recognized.

### 1. Interpreting "permitted by law" to mean "permitted by any valid contract" is inconsistent with the text of Section 1692f(1).

Section 1692f(1)'s text and structure make clear that a fee is not "permitted by law" within the meaning of that provision whenever it would be permitted by a valid contract.

1. To begin, interpreting amounts "permitted by law" to include amounts permitted by *any* agreement that would be valid under state contract law would render superfluous Section 1692f(1)'s other prong allowing collectors to collect amounts "expressly" authorized by an "agreement creating the debt." As this Court

has recognized, any interpretation that "would render a clause, sentence, or word … superfluous, void, or insignificant" is disfavored. *Campbell v. Universal City Dev. Partners, Ltd.*, 72 F.4th 1245, 1256 (11th Cir. 2023). Ocwen's interpretation runs afoul of this well-established canon in at least two ways.

First, an "agreement creating the debt" is, by definition, an agreement valid under state contract law. Thus, if being authorized under a valid agreement were enough to count as being "permitted by law," Section 1692f(1)'s reference to "agreement[s] creating the debt" would be unnecessary.

Second, such an interpretation also renders superfluous Section 1692f(1)'s requirement that amounts agreed to in the underlying contract be "expressly" authorized. After all, general principles of state contract law recognize that agreements can have express and implied terms. *See* Restatement (Second) of Contracts § 4 cmt. a (1981). If general principles of contract law counted as a "law" that "permitted" the collection of amounts, debt collectors could collect amounts that are only implicitly authorized by the agreement creating the debt— rendering Section 1692f(1)'s "express" requirement meaningless.

2. Separately, understanding an amount to be "permitted by law" so long as it is permitted by a valid contract ignores Section 1692f(1)'s focus on the "amount" being "permitted by law." As the Tenth Circuit has recognized, the FDCPA "does not ask whether [the debt collector's] actions were permitted by law … it asks

whether the *amount* he sought to collect was permitted by law." *Johnson v. Riddle*, 305 F.3d 1107, 1118 (10th Cir. 2002) (emphasis in original). So, contrary to Ocwen's suggestion (at 33-34), it is not enough for the *agreement* to be "permitted by law"; rather, the "amount" itself must be. Contract law standing alone does not authorize the collection of any specific amounts. Thus, while it may be permissible under contract law for a company to enter into agreements for consumers to pay pay-to-pay fees, contract law does not permit the "amount," *i.e.*, the fee itself. As discussed, Section 1692f(1) requires the "amount" to be "permitted by law."

### 2. An "amount" is "permitted by law" under Section 1692f(1) only if a law affirmatively authorizes it.

Section 1692f(1) is best understood to mean that an amount is "permitted by law" only when a law affirmatively authorizes it. That reading accords with a common meaning of "permit"—"to consent to expressly or formally." *Webster's Third New International Dictionary* 1683 (1976); *see also Black's Law Dictionary* (5th ed. 1979) (defining "permit" as "to expressly assent or agree to the doing of an act").

To be sure, the word "permit," when read in isolation, can also mean "to allow" or "to acquiesce, by failure to prevent." *Black's Law Dictionary* (5th ed. 1979). However, "allow and permit have an important connotative difference. Allow … suggests merely the absence of opposition, or refraining from a proscription. In contrast, permit suggests affirmative sanction or approval."

*Alexander*, 23 F.4th at 377 (quotations omitted). Use of the word "permit," rather than "allow," therefore means that affirmative authorization, "rather than mere lack of prohibition," is required. *Id.*

Moreover, "permit" is used not in isolation but as part of the phrase "permitted by law." While in some contexts one may "permit" something by failing to prevent it, it is far less natural to understand "permitted by law" to mean "permitted by the absence of any law prohibiting it."

Reading "permitted by law" to mean "not prohibited by law" is also inconsistent with the FDCPA's purposes. Congress passed the FDCPA in part because of the "lack of meaningful legislation on the State level." S. Rep. No. 95-382 at 2; *see also* 15 U.S.C. § 1692(b) ("[e]xisting laws and procedures … [were] inadequate to protect consumers"). Given the concern about the lack of existing protections, it is decidedly unlikely that, where the underlying agreement creating the debt did not authorize an amount, Congress intended for debt collectors to nonetheless be able to collect it so long as state law simply did not prohibit it.

Indeed, courts and regulators alike have understood Section 1692f(1)'s "permitted by law" prong to require affirmative authorization. For example, the Fourth Circuit recently held that "permitted by law" requires "affirmative sanction or approval"—and that "contract principles" therefore are not "enough to permit the charging of [pay-to-pay] fees." *Alexander*, 23 F.4th at 377, 379. The Seventh

Circuit held that a fee was not "permitted by law" under Section 1692f(1) where no "law expressly permit[ed]" the fee. *Seeger v. AFNI, Inc.*, 548 F.3d 1107, 1111, 1112 (7th Cir. 2008). And the Second Circuit similarly explained that charges are not "permitted by law" where state law does not "affirmatively permit[]" them. *Tuttle v. Equifax Check*, 190 F.3d 9, 13 (2d Cir. 1999) (finding state law affirmatively permitted a service charge for dishonored checks).

The FTC and the Bureau interpret Section 1692f(1) the same way. In 1988, the FTC, which had primary enforcement authority over the FDCPA before the creation of the Bureau, *see* 15 U.S.C. § 1692*l*(a) (2010), issued non-binding staff commentary stating that, where a contract does not authorize an amount, a debt collector could collect it if it was "expressly permitted by state law," but not if "state law is silent." 53 Fed. Reg. at 50108.[8] Similarly, in 2022, the Bureau stated

---

[8] Ocwen ignores the Staff Commentary's on-point discussion of what amounts are "permitted by law" under Section 1692f(1) and instead distorts other parts of the Commentary to claim collectors can permissibly collect pay-to-pay fees if a consumer agrees to it. (Br. at 34.) For instance, Ocwen errs in contending that the Commentary says that debt collectors may charge a fee if the collector puts the consumer on notice that her choice of payment method may result in fees and the consumer enters into a separate "agreement" to pay those fees. (*Contra* Br. at 34 (citing 53 Fed. Reg. at 50108)). The cited portion of Commentary explains that the "agreement creating the debt" need not be a "written contract"—and thus an amount could be "expressly authorized by the agreement creating the debt" if, for example, a merchant to whom the debt is owed had posted a sign allowing service charges for dishonored checks and the consumer knew that when paying by check. *Id.* at 50108. The Commentary does not suggest that collectors can collect amounts authorized by some agreement *other than* the one creating the debt.

in an advisory opinion that "permitted by law" in Section 1692f(1) refers to "affirmative authorization." 87 Fed. Reg. at 39734.

Because general principles of contract law do not affirmatively authorize collection of any amounts, those principles do not satisfy Section 1692f(1)'s "permitted by law" prong.

**B. Neither the Electronic Fund Transfer Act nor the Truth in Lending Act authorizes pay-to-pay fees.**

Contrary to Ocwen's argument, neither the Electronic Fund Transfer Act (EFTA) nor the Truth in Lending Act (TILA) authorizes pay-to-pay fees either.

As to EFTA, Ocwen cites (at 30) a provision requiring entities to disclose "any charges for electronic fund transfers" (such as some online and phone payments). 15 U.S.C. § 1693c(a)(4); *see also* 12 C.F.R. § 1005.7(b)(5) (regulation requiring same disclosure). That provision does not authorize any charges. While the provision may contemplate that some companies may charge pay-to-pay fees in some circumstances, that sheds no light on whether debt collectors subject to the FDCPA may charge such fees when they are neither expressly authorized by the agreement creating the debt nor affirmatively permitted by law. EFTA certainly provides no such permission.

Ocwen's reliance on TILA is similarly unavailing. Ocwen first cites (at 30) a provision that generally *prohibits* pay-to-pay fees for certain types of credit, 15 U.S.C. § 1637(*l*), and claims that it therefore implicitly *permits* such fees for other

types of credit. But, as discussed above, the lack of a prohibition is not enough for something to be permitted by law.

Ocwen's attempt to rely on official regulatory interpretation of a rule implementing a different TILA provision fares no better. The provision Ocwen invokes requires creditors to make disclosures when consumers open certain home-equity plans, but those disclosures need not list pay-to-pay fees so long as the consumer can pay by other reasonable means. 12 C.F.R. pt. 1026, Supp. I ¶ 6(a)(2)-2.x. This disclosure rule, like EFTA's, does not authorize any fees.[9]

### III. Limiting debt collectors' collection of pay-to-pay fees provides consumers important protections.

Understanding Section 1692f(1) to limit debt collectors' collection of pay-to-pay fees is consistent with the FDCPA's purposes of protecting consumers. Congress passed the FDCPA after finding that "debt collection abuse by third party debt collectors [was] a widespread and serious national problem." S. Rep. No. 95-382, at 2 (1977). Problems in the debt collection space can be particularly acute

---

[9] Ocwen also claims that various consent orders and a Veterans Administration (VA) regulation show that "convenience fees are proper." (Br. at 32-33.) Not so. The cited consent orders at most allow defendants to charge fees unless "prohibited by law"—which, of course, would not allow debt collectors to collect those fees when the FDCPA prohibits it. *See, e.g.*, Consent J., *CFPB, et al. v. Ocwen Fin. Corp.*, No. 1:13-cv-2025, ECF No. 12-1 at A-39 (D.D.C. Feb. 26, 2014). And the VA regulation permits the VA to charge pay-to-pay fees on certain loans, which in no way suggests that debt collectors can charge pay-to-pay fees even if not expressly authorized by the underlying agreement or permitted by law.

because "collectors are likely to have no future contact with the consumer and often are unconcerned with the consumer's opinion of them." S. Rep. No. 95-382, at 2. Consumers cannot shop around for a different debt collector, so debt collectors have limited market incentives to treat them fairly. Section 1692f(1) ensures that collectors collect only those amounts that consumers agreed to upfront—when they had the ability to shop around—unless some law permits the collector to impose additional charges later.

While consumers may in some sense have a choice whether to pay these added "convenience fees," that choice may often be illusory. Consumers with debts in collection may feel compelled to choose the payment option that most quickly and reliably goes through in order to avoid the adverse consequences that can result from a delayed payment—such as accruing interest and late fees, continued adverse credit-reporting, or a potential lawsuit. As Congress recognized, consumers subject to debt collection are usually already facing "an unforeseen event such as unemployment, overextension, serious illness, or marital difficulties or divorce." *Id*. at 3. These consumers, already under stress, may want the peace of mind of using a payment method that they can immediately confirm went through via a confirmation over the phone or online. Consumers may not want to chance paying by mail, which could get lost and would take more time to reach the debt collector. Thus, consumers may feel pressured to pay by means that are the fastest

and most reliable—despite the attached fee. This is particularly problematic because consumers have no ability to choose a collector who offers convenient payment methods at lower or no cost.

There is, moreover, no reason to think that limiting pay-to-pay fees will hurt consumers by leading debt collectors to stop offering convenient payment methods that consumers want, as Ocwen argues (at 37-38). For one, it is generally *cheaper* for collectors to accept payment by phone or online than by mail (which is typically the fee-free option). Processing a phone or online payment typically costs a debt collector $0.50 or less, while processing a mailed check can cost up to $4. *See supra* n.2-3. And pay-to-pay fees that collectors charge typically far exceed the cost to the collector: Whereas pay-to-pay fees typically cost consumers between $4 and $12, debt collectors typically pay between $0.20 and $0.50 to process an online or phone payment. *See id.* at 5. The stipulated facts entered in the district court reflect that reality: Ocwen charged plaintiffs between $7.50 and $12 for online or phone payments, and the company Ocwen hired to process the payments kept only $0.40 of each fee, with the remainder going to Ocwen. Appx. at 239; 661. Moreover, the whole point of debt collection is to get consumers to pay debts. It is therefore in debt collectors' interest to provide convenient payment methods— even if they cannot charge extra for it.

## CONCLUSION

For the foregoing reasons, the Court should hold that a debt collector violates Section 1692f(1) of the FDCPA if it collects a pay-to-pay fee that is not expressly authorized by the agreement creating the debt or affirmatively authorized by law.

Dated: February 27, 2024

Anisha Dasgupta
    *General Counsel*
Mariel Goetz
    *Acting Deputy General Counsel*
Federal Trade Commission
600 Pennsylvania Avenue, NW
Washington, D.C. 20580
(202) 326-2763
mgoetz@ftc.gov

Respectfully submitted,

Seth Frotman
    *General Counsel*
Steven Y. Bressler
    *Deputy General Counsel*
Kristin L. Bateman
    *Assistant General Counsel*

/s/ *Joseph Frisone*
Joseph Frisone
    *Senior Counsel*
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, D.C. 20552
(202) 435-9287
Joseph.Frisone@cfpb.gov

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the brief exempted by Fed. R. App. P. Rule 32(f), this brief contains 6464 words.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 and 14-point Times New Roman font.

February 27, 2024    <u>s/ Joseph Frisone</u>

Joseph Frisone
Senior Counsel
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, D.C. 20552
(202) 435-9287
Joseph.Frisone@cfpb.gov

## CERTIFICATE OF SERVICE

I hereby certify that on February 27, 2024, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

February 27, 2024                    s/ Joseph Frisone

Joseph Frisone
Senior Counsel
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, D.C. 20552
(202) 435-9287
Joseph.Frisone@cfpb.gov