## United States Court of Appeals
## for the Eleventh Circuit

━━━━━━━━━━━━━━━━◆━━━━━━━━━━━━━━━━

### Sheryl Glover and Cathy Booze,
*Appellees,*

**v.**

### Ocwen Loan Servicing, LLC,
*Appellant.*

━━━━━━━━━━━━━━━━◆━━━━━━━━━━━━━━━━

**On Appeal from the United States District Court for the Southern District of Florida, Nos. 9:20-cv-80053-DMM & 9:20-cv-80135-DMM**

━━━━━━━━━━━━━━━━◆━━━━━━━━━━━━━━━━

### REPLY BRIEF OF APPELLANT
### OCWEN LOAN SERVICING, LLC

━━━━━━━━━━━━━━━━◆━━━━━━━━━━━━━━━━

**Michael R. Pennington**
BRADLEY ARANT BOULT CUMMINGS LLP
**1819 5th Avenue North**
**Birmingham, Alabama 35203**
**(205) 521-8391**
**mpennington@bradley.com**

**Scott Burnett Smith**
BRADLEY ARANT BOULT CUMMINGS LLP
**200 Clinton Avenue West, Suite 900**
**Huntsville, Alabama 35801**
**(256) 517-5198**
**ssmith@bradley.com**

**Kimberly M. Ingram-Hogan**
BRADLEY ARANT BOULT CUMMINGS LLP
**1221 Broadway, Suite 2400**
**Nashville, TN 37203**
**(615) 252-3592**
**kingram@bradley.com**

**Counsel for Appellant Ocwen Loan Servicing, LLC**

**CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT**

Appellant PHH Mortgage Corporation, as successor by merger to named Appellant Ocwen Loan Servicing, LLC (together, "Appellant"), pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1, identifies below all trial judges, attorneys, persons, associations of persons, firms, partnerships, corporations, and other legal entities that have an interest in the outcome of this case, including subsidiaries, conglomerates, affiliates and parent corporations, any publicly held company that owns 10 percent or more of a party's stock, and other identifiable legal entities related to a party.

Andreu, Timothy A., Attorney for Appellee

Bailey & Glasser, LLP, Counsel for Appellee

Booze, Cathy, Appellee

Bradley Arant Boult Cummings LLP, Counsel for Appellant

Consumer Law Attorneys, Counsel for Appellee

Evans, Diana N., Attorney for Appellant

Glover, Sheryl, Appellee

Ingram-Hogan, Kimberly M., Attorney for Appellant

Kauffman, James Lawrence, Attorney for Appellee

Kim, Young, Attorney for Appellee

Korte and Wortman P.A., Counsel for Appellee

Middlebrooks, The Honorable Donald M., United States District Judge for the Southern District of Florida

Moore, Jamie L., Attorney for Appellant

Ocwen Financial Corporation, which is publicly traded on the New York Stock Exchange (OCN) and which is the parent corporation of PHH Corporation

Ocwen Loan Servicing, LLC, Appellant, which no longer exists as a standalone entity

Pennington, Michael R., Attorney for Appellant

PHH Corporation, which is privately held and the parent corporation of PHH Mortgage Corporation

PHH Mortgage Corporation, successor by merger to named Appellant Ocwen Loan Servicing, LLC

Smith, Scott Burnett, Attorney for Appellant

## TABLE OF CONTENTS

TABLE OF CITATIONS ............................................................................. ii

INTRODUCTION ...................................................................................... 1

ARGUMENT ............................................................................................ 3

    I.      Ocwen's convenience fees do not violate the FDCPA because they are not incidental to a debt. ....................................................... 4

           A.      A debt collector does not violate the FDCPA by accepting payment of a fee that is not incidental to the debt. ................................................................................ 4

           B.      Ocwen's convenience fees are not incidental to the debt. ......... 10

    II.     Ocwen's convenience fees do not violate the FDCPA because Ocwen does not collect them. ........................................................ 16

    III.    Ocwen's convenience fees do not violate the FDCPA because they are permitted by law. .................................................................. 19

           A.      An amount need not be affirmatively authorized to be "permitted by law." ................................................................ 20

           B.      Convenience fees are permitted by federal law. ...................... 22

           C.      Convenience fees are permitted by Florida contract law. ......... 25

    IV.    Convenience fees support a valuable consumer service that the FDCPA is not intended to restrain. .................................................... 29

CONCLUSION ........................................................................................ 29

CERTIFICATE OF COMPLIANCE ................................................................ 2

CERTIFICATE OF SERVICE ....................................................................... 3

**Page(s)**

**Cases**

*Alexander v. Carrington Mortg. Servs., LLC,*
23 F.4th 370 (4th Cir. 2022) ........................................................8, 24, 25, 26, 27

*Anderman v. JP Morgan Chase Bank, Nat'l Ass'n,*
803 F. App'x 290 (11th Cir. 2020) (per curiam) ...............................................17

*Anderson v. Cagle's, Inc.,*
488 F.3d 945 (11th Cir. 2007) .........................................................................15

*Baggett v. First Nat'l Bank of Gainesville,*
117 F.3d 1342 (11th Cir. 1997) ........................................................................18

*Black Warrior Riverkeeper, Inc. v. Black Warrior Mins., Inc.,*
734 F.3d 1297 (11th Cir. 2013) ..........................................................................7

*Brothers v. First Leasing,*
724 F.2d 789 (9th Cir. 1984) .....................................................................13, 23

*Facebook, Inc. v. Duguid,*
592 U.S. 395 (2021) ............................................................................................6

*Fenello v. Bank of Am., NA,*
577 F. App'x 899 (11th Cir. 2014) ...................................................................24

*Glock v. Glock, Inc.,*
797 F.3d 1002 (11th Cir. 2015) ..........................................................................6

*Harris v. Liberty Community Management, Inc.,*
702 F.3d 1298 (11th Cir. 2012) ........................................................11, 12, 13, 14

*Landcastle Acquisition Corp. v. Renasant Bank,*
57 F.4th 1203 (11th Cir. 2023) .........................................................................25

*Lembeck v. Arvest Cent. Mortg. Co.,*
498 F. Supp. 3d 1134 (N.D. Cal. 2020) ............................................................24

*Mann v. Nat'l Asset Mgmt. Enters., Inc.*,
   No. 04-1304, 2005 WL 8163297 (C.D. Ill. Feb. 24, 2005) ................................ 18

*Martin v. Soc. Sec. Admin., Comm'r*,
   903 F.3d 1154 (11th Cir. 2018) ........................................................................ 15

*McFadden v. Nationstar Mortg. LLC*,
   2022 WL 1001253 (D.D.C. Apr. 4, 2022) ........................................................... 9

*Nguyen v. United States*,
   556 F.3d 1244 (11th Cir. 2009) ........................................................................ 26

*Patrick v. PHH Mortg. Corp.*,
   937 F. Supp. 2d 773 (N.D. W. Va. 2013) .......................................................... 24

*Quinteros v. MBI Assocs., Inc.*,
   999 F. Supp. 2d 434 (E.D.N.Y. 2014) ................................................................. 9

*Smith v. EVB*,
   438 F. App'x 176 (4th Cir. 2011) ...................................................................... 23

*United States v. Ballinger*,
   395 F.3d 1218 (11th Cir. 2005) .......................................................................... 7

*United States v. Hastie*,
   854 F.3d 1298 (11th Cir. 2017) .......................................................................... 7

*Veale v. Citibank, F.S.B.*,
   85 F.3d 577 (11th Cir. 1996) ........................................................... 12, 13, 14, 16

**Statutes**

15 U.S.C. § 1605(a) ............................................................................................... 13

15 U.S.C. § 1666 *et seq.* ....................................................................................... 24

15 U.S.C. § 1692a(6) .......................................................................... 11, 16, 18, 19

15 U.S.C. § 1692f ........................................................................................... *passim*

Consumer Credit Protection Act ..................................................................... 13, 23

**Other Authorities**

Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed.
 Reg. 50,097, 50,107–08 (Dec. 13, 1988)........................................................9, 10

*Webster's Third New International Dictionary* .......................................................20

The FDCPA prohibits debt collectors from using certain means of collecting debt. Glover and Booze construe one such prohibition as preventing any debt collector from ever offering a borrower an optional service in exchange for a fee unless that fee is affirmatively authorized by law or expressly authorized by the agreement creating the debt. As a result, they conclude that the FDCPA prohibits fees for expedited payment methods that the loan agreements do not require a mortgage servicer to offer and that the borrower affirmatively agrees to purchase only after complete disclosures. Glover and Booze's interpretation contradicts the FDCPA's text and purpose for at least three reasons.

*First*, the FDCPA does not regulate *every* amount that a loan servicer might receive from a borrower whose debt it is servicing. Instead, by its plain text, the relevant statute regulates collection of debts and amounts incidental to debts. Glover and Booze concede convenience fees are not debts, but these fees also are not amounts incidental to debts because a borrower never needs to incur the fee to pay their debt.

*Second*, the FDCPA only regulates debt collection, not every activity a debt collector undertakes. Like the District Court, Glover and Booze entirely ignore this

threshold issue, but it is important because Ocwen does not charge convenience fees for collecting debt. Instead, it charges these fees for a separate service if the borrower chooses to use that service. As a result, the FDCPA does not regulate these fees.

*Third*, standard rules of statutory construction and simple logic dictate that "permitted by law" cannot mean "affirmatively authorized" by law, as Glover and Booze argue. That interpretation offers no distinction between the word "permitted" and the phrase "expressly authorized" used in the same provision. Instead, the word "permitted" means a law may "permit" a fee *without* expressly or affirmatively authorizing it.

So interpreted, law permits Ocwen's convenience fees. In federal law, sister statutes to the FDCPA—the EFTA and TILA—provide permission. The EFTA sets rules for electronic fund transfers and permits fees to be charged for such transfers. TILA states when convenience fees are *not* allowed, and the prohibition does not apply to Ocwen's fees. Therefore, the EFTA and TILA permit these convenience fees. Moreover, established principles of Florida contract law also permit these fees. Glover and Booze do not dispute that they contracted to pay the fees for the service Ocwen provided. Instead, they contend the contract was void because the FDCPA makes such fees illegal. However, the FDCPA explicitly allows charges for

incidental fees outlined in an original loan agreement, which establishes that such fees are *not* illegal. The FDCPA's pro-consumer objectives do not limit consumers from contracting for new services after signing their initial loan agreement.

The reality is simple: Glover and Booze originally contracted to pay their mortgages by delivering payments to a specific address. Ocwen had no obligation to accept payment any other way. But it chose to offer additional, more convenient options for payment by phone and online in exchange for a fee. Each time Glover and Booze chose to pay via these options, they were notified of free alternatives but agreed to pay the fee and use the optional expedited methods anyway. This is not the type of conduct the FDCPA prohibits, and this Court should reverse District Court's holding otherwise.

## ARGUMENT

The relevant statute, 15 U.S.C. § 1692f, prohibits a "debt collector" from "us[ing] unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. One of the "means" this statute prohibits is the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *Id.* § 1692f(1). As explained below, Glover and Booze

have failed to refute the reasons Ocwen's convenience fees do not violate this statute: (i) convenience fees are not the type of incidental "amounts" the FDCPA prohibits charging; (ii) convenience fees are neither "collected" nor a "means to collect" a debt; and (iii) convenience fees are permitted by law.

I.     **Ocwen's convenience fees do not violate the FDCPA because they are not incidental to a debt.**

The FDCPA does not prohibit Ocwen's convenience fees because they are neither a debt nor incidental to a debt.

A.     <u>**A debt collector does not violate the FDCPA by accepting payment of a fee that is not incidental to the debt.**</u>

The FDCPA does not regulate every fee that a "debt collector" may charge. As the District Court acknowledged, § 1692f(1) applies only to collection of fees "incidental to the principal obligation." *Glover*, R-20-3; *Booze*, R-12-3.[1] Glover and Booze's counterargument—that the reference to "any amount" means § 1692f(1) reaches *every* fee a debt collector charges—contradicts the FDCPA's text and purpose as well as case law and the FTC's guidance.

---

[1] Record citations and defined terms are used in the same manner as in the Opening Brief ("Blue Br."). Citations to briefs in this appeal refer to user-added page numbers.

The FDPCA itself explains what Congress meant by "any amount." Section 1692f refers to collection of "any debt" and subsection (1) refers to collection of "any amount (including any interest, fee, charge, or expense *incidental to* the principal obligation)." 15 U.S.C. § 1692f(1) (emphasis added). This text necessarily limits the prohibition on collecting "amount[s]" to the debt and those amounts incidental to it. Glover and Booze understood this in the District Court, positing in their proposed conclusions of law that "[f]or the FDCPA to be applicable, Defendant must be engaged in the collection of an amount incidental to a debt when it collected Speedpay Fees from Plaintiff." *Glover* R-78-2, ¶ 16; *Booze*, R-69-2, ¶ 17; *see also Glover* R-78-2, ¶ 19; *Booze*, R-69-2, ¶ 20 (similar).[2] They should not be heard to contradict that position now.

Nevertheless, Glover and Booze now suggest § 1692f(1) prohibits collection of every amount in every circumstance, unless the loan agreement expressly, or law affirmatively, authorizes it. But if Congress intended for § 1692f(1) to prohibit charging all amounts in all circumstances, there was no point in adding § 1692f(1)'s parenthetical: Congress could have prohibited collection of "any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by

---

[2] Glover and Booze concede these fees are not debts (Resp. Br. at 23), so this brief focuses on the prohibition on collecting amounts "incidental" to the debt.

law." Congress did not do so, and its choice must be given effect. *See Glock v. Glock, Inc.*, 797 F.3d 1002, 1006 (11th Cir. 2015) (enforcing plain meaning where Congress "easily could have expressed [a particular] intention … , even by simply adding [a] word … [b]ut it did not do that"). Simply put, Congress did not intend for "any amount" to capture *any* fee a debt collector might charge, and this Court should not create new prohibitions.

Glover and Booze also half-heartedly assert that "incidental" modifies only the final term in the parenthetical: "expense." Resp. Br. at 17, 19. Although no authority is cited, Glover and Booze appear to invoke the rule of the last antecedent, under which "a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows." *Facebook, Inc. v. Duguid*, 592 U.S. 395, 404 (2021) (quotation omitted). But "[t]he rule of the last antecedent is context dependent," and the Supreme Court "has declined to apply the rule where, like here, the modifying clause appears after an integrated list." *Id.* (citing *Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 344, n.4 (2005)). Therefore, "incidental" modifies each example given: interest, fee, charge, or expense.

So, Glover and Booze try instead to frame the parenthetical in § 1692f(1) as providing only non-limiting examples of the statute's effect. *See* Resp. Br. at 16–19.

Where Congress includes examples in a statute, however, those examples are instructive as to the statute's scope. *See, e.g.*, *United States v. Hastie*, 854 F.3d 1298, 1303 (11th Cir. 2017) ("Because associated words bear on one another's meaning, the examples [in a statute] give meaning to the [defined statutory] term." (quotation omitted)). If Congress did not want this parenthetical to inform the meaning of "amount," it could have stated that interest, fees, charges, or expenses were prohibited "whether or not incidental." Instead, Congress specifically provided *only* amounts that were incidental to a debt as examples of the extra fees and charges prohibited under § 1692f(1). Therefore, the only reasonable way to read the statute is as applying solely to collection of the debt itself or amounts incidental to the debt.

Such a restriction makes sense. Statutes are read in light of their entire text and purpose. *See Black Warrior Riverkeeper, Inc. v. Black Warrior Mins., Inc.*, 734 F.3d 1297, 1302 (11th Cir. 2013) (referring to "statutory construction" as a "holistic endeavor" and describing goal of "fit[ting], if possible, all parts [of a statute] into a harmonious whole" (quotation omitted)); *United States v. Ballinger*, 395 F.3d 1218, 1237 (11th Cir. 2005) (the court's "task is to interpret the words of these statutes in light of the purposes Congress sought to serve" (quotation and emphasis omitted)). The FDCPA's express purpose is regulating debt collection. *See infra* Part II. So, it is logical for § 1692f(1)—as a specific illustration of an "unfair or unconscionable

means to collect" a debt—to target "amounts" that are either debts or incidental to debts, while excluding other amounts.

Glover and Booze next resort to positing hypothetical statutes, touting the example of a "statute that prohibits gambling on 'any sporting event (including any game, race, or match broadcast on television).'" Resp. Br. at 19 (quoting *Alexander v. Carrington Mortg. Servs., LLC*, 23 F.4th 370, 377 (4th Cir. 2022)). The *Alexander* court concluded this hypothetical statute could not be read as regulating only gambling on televised events, *see* 23 F.4th at 377, but the correct interpretation actually would depend on the entire statute. If, as the *Alexander* court assumed, this statute regulated betting on every sporting event, it is not clear why Congress would include a parenthetical identifying a subclass of televised sporting events. But if this statute were part of a larger scheme regulating interstate broadcasting, it would make perfect sense that it only prohibited gambling on televised matches, as anything else would be beyond the statute's reach—just as amounts unrelated to debt collection are beyond the FDCPA's reach. Without the text of the entire statute, however, it is impossible to know which interpretation makes sense.[3] Hypothetical statutes simply do not aid interpretation of § 1692f(1)'s actual text.

---

[3] Glover and Booze's own hypothetical statutes fail to inform the analysis for similar reasons. A restriction on non-native plant species (Resp. Br. at 27) might be part of a statute regulating human health concerns, in which case regulating only plants for

Conforming to the FDCPA's plain text and purpose, courts regularly consider whether a challenged fee was "incidental" to the debt to be a threshold issue in evaluating a claim under § 1692f(1). Glover and Booze's passing argument that these courts have done so thoughtlessly (Resp. Br. at 19 n.2) is without merit. Those courts have applied the FDCPA's plain text. Indeed, even decisions that Glover and Booze cite approvingly acknowledge that an amount must be "incidental" to the debt to violate § 1692f(1). *See McFadden v. Nationstar Mortg. LLC*, 2022 WL 1001253, at *5 (D.D.C. Apr. 4, 2022) ("[T]o establish a § 1692f(1) violation, a plaintiff must show that the money demanded of her was incidental to a claimed debt." (quotation omitted)); *Quinteros v. MBI Assocs., Inc.,* 999 F. Supp. 2d 434, 438 (E.D.N.Y. 2014) (referring to "§ 1692f(1)'s plain instruction that the collection of *any amount incidental to* the principal obligation, unless otherwise authorized by agreement between the parties or permitted by law, violates the FDCPA" (emphasis added)).

Likewise, the FTC's official commentary explains that the FDCPA's use of the term "amount" includes the debt and "any incidental charges" but makes no mention of any other amount as included therein. *See* Staff Commentary on the Fair

---

human consumption would be logical. Glover and Booze's second example—a firearm prohibition enumerating certain firearms as examples (*id.* at 28)—is simply irrelevant because it does not contain a modifying phrase like § 1692f(1).

Debt Collection Practices Act, 53 Fed. Reg. 50,097, 50,107–08 (Dec. 13, 1988). Although the FTC takes a different position in its *amici curiae* brief, the FTC does not contest Ocwen's reading of its official commentary. *Compare* CFPB & FTC Br. at 13–14 *with* Blue Br. at 15. Nor does the FTC suggest that it has ever revoked or revised this commentary.

For these reasons, charging "amounts" can only violate § 1692f(1) if the amounts are debts or incidental to debts.

## B. Ocwen's convenience fees are not incidental to the debt.

Ocwen's convenience fees do not violate the FDCPA because they are not incidental to the borrower's mortgage debt. The borrower always has the freedom not to purchase the online or telephonic payment services and incurs the fee only when they choose to do so despite Ocwen's disclosures of alternative methods. *See* Blue Br. at 19. Further, the underlying debt's amount or status does not affect the fee, and the fee does not affect the debt's amount or status. Put another way, although a borrower only pays a convenience fee when paying her mortgage, the reverse is not true: She can pay her mortgage without paying a convenience fee. So, the convenience fee does not "naturally attach to" the mortgage and is not incidental to

that mortgage. It is instead the consideration for a separate service the borrower chooses to purchase.

The District Court erred in concluding otherwise. It focused on whether the convenience fee was "dependent" on a debt to determine whether the amount was incidental and incorrectly concluded the convenience fee was dependent. *See* Blue Br. at 20. Glover and Booze do not defend the District Court's definition of "incidental" but advocate for an even broader definition that likewise does not comport with the context in which "incidental" is used.

Glover and Booze primarily advance a definition of "incidental" adapted from a case that concerned a different usage of "incidental." In *Harris v. Liberty Community Management, Inc.*, 702 F.3d 1298 (11th Cir. 2012), this Court considered whether a particular exemption under the FDCPA's definition of "debt collector" applied to the defendant, a property management company. *Id.* at 1300, 1302. That exemption was for persons "collecting or attempting to collect any debt owed … another to the extent such activity is incidental to a bona fide fiduciary obligation." 15 U.S.C. § 1692a(6)(F)(i). The Court explained that "[t]he word 'incidental,' in common parlance, means 'occurring as something casual or of secondary importance.'" *Harris*, 702 F.3d at 1302 (quoting 1 SHORTER OXFORD

ENGLISH DICTIONARY 1343 (5th ed. 2002)). It then held that the exemption

applied because defendant's "debt-collection activities were not central to, or the

primary purpose of [the defendant's] wide-ranging duties under the management

agreement." *Id.*

*Harris*'s explanation of "incidental" would not make sense applied here. In

the provision examined in *Harris*, the word "incidental" is used to *exclude* persons

from the FDCPA. Given the FDCPA's purpose, it is logical that Congress would

want to exclude those fiduciaries for whom debt collection was "not central to, or

the primary purpose of," their duties. *See Harris*, 702 F.3d at 1302–03 (referring to

defendant's limited debt collection role). But in § 1692f(1), the word "incidental" is

used to *include* certain activity within the FDCPA's reach. When used in that way,

interpreting "incidental" as of "secondary importance" or "not central to" renders

the word meaningless because it covers every amount that is not the debt itself. It

does not make sense that the "Fair Debt Collection Practices Act" would specifically

target conduct *not* central to debt collection.

These distinctions also illustrate why *Veale v. Citibank, F.S.B.*, 85 F.3d 577

(11th Cir. 1996) is more relevant here than *Harris*. In *Veale*, this Court considered

whether a lender's separation of a FedEx charge violated TILA. *See* 85 F.3d at 579.

The answer turned on whether the FedEx charge was a "finance charge," which depended on whether it was "imposed . . . as an incident to the extension of credit." 15 U.S.C. § 1605(a). In other words, TILA uses whether a charge is incidental to TILA's main purpose (extension of credit) to determine whether it is *included* in TILA's reach—just as § 1692f(1) does for the FDCPA. As a result, the use of "incident[al]" in *Veale* is much closer to the use in § 1692f(1) than in *Harris*.

Further, Glover and Booze's argument that *Veale* relates to TILA rather than the FDCPA (Resp. Br. at 25–26) misses the point. TILA and the FDCPA are part of the same statutory scheme, and courts "view the umbrella act, the Consumer Credit Protection Act, as a whole and not as separate unrelated parts." *Brothers v. First Leasing*, 724 F.2d 789, 794–95 (9th Cir. 1984). Moreover, the Court need not presume Congress intentionally used the term "incidental" consistently across TILA and the FDCPA for *Veale* to be relevant. Rather, since *Veale* interpreted a materially similar use of the term "incident to," it sheds light on the phrase's ordinary meaning.

Glover and Booze's other attempts at distinguishing *Veale* instead underscore its similarity. Just as the *Veale* fee saved the plaintiffs other costs, paying Ocwen's convenience fee saved Glover and Booze from higher late fees. *See* Blue Br. at 5. Glover and Booze describe the *Veale* fee as "a one-off charge that the bank did not

require" (Resp. Br. at 26–27[4]), yet Ocwen did not require any borrower to incur a convenience fee either. Instead, like the *Veale* plaintiffs "could have chosen not to pay the Federal Express fee," 85 F.3d at 579, Glover and Booze could have chosen not to pay the convenience fee. Both the *Veale* plaintiffs and Glover and Booze chose to pay because they wanted an extra service: expedited processing. Those services do not arise from the activity that either statute primarily regulates: extension of credit under TILA or debt collection under the FDCPA. As a result, neither fee is regulated by the relevant statute.

Despite arguing that *Harris* controls, Glover and Booze also advance another definition of "incidental." Resp. Br. at 23. Derived from the CFPB's 2022 Advisory Opinion, this definition focuses on whether an amount is "related to" the principal obligation or "subordinate to something of greater importance." *See id.* (quoting CFPB, Advisory Opinion on Debt Collectors' Collection of Pay-to-Pay Fees 5 n.19 (June 29, 2022)).

---

[4] The basis for this description is unclear. Although *Veale* mentions only the charge for the transaction at issue, that does not mean the charge did not occur for other transactions. Regardless, neither TILA nor the FDCPA determines a fee's legality based on whether it is a "one-off charge."

Glover and Booze argue that the CFPB's Advisory Opinion is entitled to *Skidmore* deference, but such deference cannot save the CFPB's flawed interpretation. The amount of deference provided under *Skidmore* depends on the "thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Martin v. Soc. Sec. Admin., Comm'r*, 903 F.3d 1154, 1159 (11th Cir. 2018).

Glover and Booze do not address any of these factors, but they weigh against *Skidmore* deference. Applying an ordinary meaning of "incidental" that excludes fees for separate services creates a result consistent with the FDCPA's text and purpose, and the CFPB's reasoning to the contrary is not valid. *See* Part I.A. Moreover, the CFPB's Advisory Opinion is not consistent with its earlier pronouncements. The CFPB previously expressly authorized servicers, via consent judgments, to charge the very types of convenience fees it now claims are illegal, establishing it did not believe such fees were illegal at that time. *See* Blue Br. at 32. The CFPB's new view of these fees as prohibited receives less deference than if it had always treated such fees as illegal. *See Martin*, 903 F.3d at 1159; *see also Anderson v. Cagle's, Inc.*, 488 F.3d 945, 956 (11th Cir. 2007) ("An agency interpretation of a relevant provision which conflicts with the agency's earlier

interpretation is entitled to considerably less deference than a consistently held agency view." (quotation omitted)).

Viewed through this lens, the CFPB has overreached with its recent pronouncement of "incidental." Whether a loan servicer like Ocwen is a "debt collector" as to a particular borrower turns, in part, on whether the loan was in default when Ocwen received servicing rights. *See* 15 U.S.C. § 1692a(6)(F)(iii). As a result, Ocwen's very relationship with that borrower always "relate[s] to" the mortgage debt. Under the CFPB's definition, every amount Ocwen charged therefore would be "incidental to the principal obligation" and illegal under the FDCPA. That result cannot be squared with existing law; it is well established the FDCPA does *not* regulate everything a debt collector does—only debt collection. *See infra* Part II. As a result, the CFPB's definition is unworkable. The Court should instead apply a logical meaning of "incidental" consistent with *Veale*.

## II.  Ocwen's convenience fees do not violate the FDCPA because Ocwen does not collect them.

A "debt collector" must be "collect[ing] or attempt[ing] to collect any debt" for § 1692f to apply at all. *See* Blue Br. at 22–23. Like the District Court, Glover and Booze never acknowledge this essential prerequisite. Nor do they respond to Ocwen's explanation of why Ocwen was not collecting debt in assessing

convenience fees: The convenience fees are never "owed," are not preceded by a demand, and are not collected on behalf of "another." *Id.* at 24–25.

Instead, Glover and Booze emphasize that Ocwen is a debt collector as to their loans (Resp. Br. at 13–15), but that is not dispositive. The challenged conduct must "relate[ ] to debt collection" *in addition to* the defendant being a debt collector. *Anderman v. JP Morgan Chase Bank, Nat'l Ass'n*, 803 F. App'x 290, 292 (11th Cir. 2020) (per curiam). Thus, it is not true that "Ocwen need only be a debt collector as to the underlying debt." Resp. Br. at 14 (quoting *Glover*, R-20-8; *Booze*, R-12-8). Instead, for the FDCPA to even apply to a fee, the defendant must be charging the fee as a means of collecting or attempting to collect a debt.

Departing from Glover and Booze, the FTC and CFPB's *amici curiae* brief acknowledges this collection requirement: "Section 1692f(1) applies when a collector *collects* 'any amount' *as a means of collecting a debt*." CFPB & FTC Br. at 12 (emphasis added). Ocwen's assessment of convenience fees does not satisfy these requirements.

***First***, Ocwen does not "collect" a convenience fee. In the debt collection context, "collect" has a particular meaning: It is preceded by a "demand" for the

amount. *See Mann v. Nat'l Asset Mgmt. Enters., Inc.*, No. 04-1304, 2005 WL 8163297, at *2 (C.D. Ill. Feb. 24, 2005). The FTC and CFPB argue this meaning applies if the defendant is collecting a debt but not if it is collecting an "amount." *See* CFPB & FTC Br. at 17. Accepting that logic, however, would mean that the word "collect" has two different meanings in the very same provision of the FDCPA, a disfavored result. *See Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1350 (11th Cir. 1997) (construction of statute was "incorrect" where "exact same words in the same clause . . . would have two totally different meanings"). If "collect" instead is used consistently in the same provision, then Ocwen did not "collect" any amount in assessing convenience fees because there was no preceding demand.

Likewise, Ocwen is not "collecting" a convenience fee because it charges the fee on its own behalf. The FDCPA defines the term "debt collector" as encompassing only those who "collect" debts owed another. 15 U.S.C. § 1692a(6). The FTC and CFPB argue that, because this limitation appears in the definition of "debt collector," it sheds no light on the meaning of "collects." *See* CFPB & FTC Br. at 17. This is too fine a distinction. "Collects" is an undefined term in the FDCPA, but the FDCPA uses the word "collects" in defining "debt collector," 15 U.S.C. § 1692a(6), so these terms clearly are closely related. Consistent with this textual limitation, the FDCPA

does not regulate those collecting their *own* debts or "amounts." *See* Blue Br. at 37–38 (collecting authorities). The fact that the FDCPA provides one narrow exception for those seeking their own debts *if they are pretending to be a third party* (15 U.S.C. § 1692a(6)) does not undercut that conclusion.

***Second***, Ocwen does not assess a convenience fee as a means of collecting a debt. The only debt here is the mortgage owned by the lender, and the convenience fee is not a "means to collect" that debt. *See* 15 U.S.C. § 1692f. The payment of the optional convenience fee does not affect the amount of the debt due, nor is the fee used to coerce payment of the debt. Instead, the convenience fee is just a contemporaneously agreed-upon price for a separate, optional service. The FDCPA does not reach that kind of charge.

### III. Ocwen's convenience fees do not violate the FDCPA because they are permitted by law.

Even if the FDCPA actually regulated these convenience fees, it would not prohibit them because they are permitted by law.

## A. __An amount need not be affirmatively authorized to be "permitted by law."__

Section 1692f(1) exempts amounts "permitted by law" from its prohibition but defines neither "permitted" nor "law." The Court should decline Glover and Booze's invitation to construe this phrase in the narrowest manner possible.

No doubt, there are multiple definitions of the word "permit," but the one that best fits here is "allow." "Permit," *Webster's Third New International Dictionary*. This is consistent with the general rule that what is not prohibited is permitted. Although another definition of "permit" requires "express" consent (CFPB & FTC Br. at 21), that definition cannot apply here because Congress *chose* to juxtapose the word "permit" and the phrase "expressly authorized," indicating they have different meanings. *See* Blue Br. at 26–27.

Implicitly recognizing this, Glover and Booze, joined by the FTC and CFPB, suggest that "permitted" means "affirmatively authorized." *See* Resp. Br. at 29–31; CFPB & FTC Br. at 21–22. The FTC and CFPB do not explain the difference between "affirmatively" and "expressly." Glover and Booze attempt to do so, arguing that a regulation "permitting" household pets would "affirmatively," but not "expressly," authorize Siberian Huskies. *See* Resp. Br. at 33. But it is difficult to imagine how a regulation that affirmatively states household pets are "permitted"

would not also "expressly authorize" a specific household pet. Ultimately, the distinction Glover and Booze attempt to draw creates no difference between "permitted" and "expressly authorized," which cannot be squared with Congress using different terms in the same provision.

For these reasons, the Court should apply the only definition of "permit" that gives the terms a different meaning: allow or not prohibit. At minimum, the Court should conclude that if a law implicitly authorizes a fee (such as by enumerating specific situations in which it is prohibited), that is sufficient to show the fee is "permitted."

As a final note, in this Court, the dispute relates to the word "permitted." No one advocates that "law" means only "state statute," as some authorities have concluded. Therefore, state or federal statutes or common law can be the source of permission. Glover and Booze attempt to manufacture a disagreement by framing Ocwen as relying on consent judgments and the VA's regulation as the "law" that permits convenience fees. Resp. Br. at 25. Ocwen, however, made no such argument. It merely pointed to these as evidence that government entities—including the CFPB and FTC—have recognized that these fees are legal when accompanied by appropriate disclosures and consent. Otherwise, they would not allow them to be

charged or rely on private industry's use of the fees in implementing their own regulations. *See* Blue Br. at 32–33. The FTC and CFPB may have recently changed their views, but that does not change the FDCPA's text or the agencies' history of allowing such fees.

### B.  Convenience fees are permitted by federal law.

Convenience fees do not violate § 1692f(1) because they are "permitted by" the EFTA and TILA. Glover and Booze's argument otherwise fails for three reasons.

***First***, the EFTA and TILA "permit" convenience fees by providing rules and exclusions for charging them. The EFTA provides rules for financial institutions' electronic fund transfers like convenience fees, and TILA prohibits only open-ended, not home-secured, credit plans from charging convenience fees. *See* Blue Br. at 29–31. Glover and Booze argue that does not constitute permission because neither statute "affirmatively authorizes" the fees—*i.e.*, neither statute specifically states that regulated entities *can* charge convenience fees. *See* Resp. Br. at 34–36. This demonstrates there is no daylight between Glover and Booze's view of "expressly authorized" and "permitted" (*i.e.*, "affirmatively authorized"); their complaint is a lack of *express* authorization. But in fact, by regulating how to charge convenience

fees and when they cannot be charged, the EFTA and TILA necessarily establish that convenience fees are otherwise permitted.

**Second**, permissions granted in the EFTA and TILA apply to Ocwen. This was not discussed in Ocwen's opening brief because Glover and Booze did not argue previously that these statutes did not apply to Ocwen. Now, they argue that the EFTA's permissions apply only to "financial institutions" and TILA's to "lenders." Resp. Br. at 34–35. The CFPB and FTC do not join this argument.

Glover and Booze's arguments ignore that the FDCPA, EFTA, and TILA are all part of the Consumer Credit Protection Act, a comprehensive set of consumer regulations designed to work together. *See Brothers*, 724 F.2d at 794–95; *Smith v. EVB*, 438 F. App'x 176, 179 (4th Cir. 2011) (noting FDCPA interpreted in light of other provisions of Consumer Credit Protection Act). Moreover, Glover and Booze never identify any statutory language that actually limits the relevant provisions of the EFTA to "financial institutions" or of TILA to "lenders," skipping straight to the definitions of those terms. Ultimately, these arguments seem rooted in an erroneous belief that Ocwen is always and exclusively a "debt collector." In reality, loan servicers like Ocwen serve a broader purpose and generally are not debt collectors under the FDCPA except as to the particular loans that they begin servicing while in

default. *See Fenello v. Bank of Am., NA*, 577 F. App'x 899, 902 (11th Cir. 2014).[5] Therefore, the Consumer Credit Protection Act generally may provide Ocwen with permission for certain actions.

**Third**, Glover and Booze's arguments regarding the "phase" of TILA's restrictions fall flat. They cite no authority for their position that TILA has a "singular focus on the extension-of-credit phase" (Resp. Br. at 36), and there are provisions in TILA that apply to other phases. For example, an entire subchapter of TILA concerns billing, a post-extension activity. *See* 15 U.S.C. § 1666 *et seq.* Further, Glover and Booze's reliance on *Alexander* is misplaced, as the Fourth Circuit did not analyze whether TILA (or the EFTA) permitted convenience fees. *See* 23 F.4th at 378–79. Instead, the cited discussion relates to whether "debt collectors [can] modify the terms of the original agreement" by contract, *id.* at 378, an issue discussed below.

---

[5] In the cases Glover and Booze cite as stating servicers generally are debt collectors, the courts specifically held that was *not* true under the FDCPA (even though it was under a state statute). *See Lembeck v. Arvest Cent. Mortg. Co.*, 498 F. Supp. 3d 1134, 1136 n.1 (N.D. Cal. 2020); *Patrick v. PHH Mortg. Corp.*, 937 F. Supp. 2d 773, 782, 790 (N.D. W. Va. 2013).

**C.** <u>**Convenience fees are permitted by Florida contract law.**</u>

No one questions that Ocwen's convenience fee agreements satisfy basic contract principles. Instead, Glover and Booze argue that the FDCPA makes the fees illegal, thus depriving borrowers of the power to contract for any new fee-based services from their mortgage servicers. *See* Resp. Br. at 36–37. It is well established that contracts to accomplish an illegal purpose are void. *See, e.g.*, *Landcastle Acquisition Corp. v. Renasant Bank*, 57 F.4th 1203, 1223 (11th Cir. 2023). But convenience fees are not *per se* illegal under the FDCPA; if they were, even the agreement creating the debt could not authorize charging them, yet the FDCPA specifically allows any fees expressly authorized in the original agreement. Therefore, the principle that parties cannot contract to conduct illegal activity simply does not apply.

To argue that § 1692f(1) implicitly excludes contract law from "law," Glover and Booze suggest Congress's specific approval of "express authoriz[ation] by the agreement creating the debt" forecloses contract law from otherwise providing permission to charge a fee. *See* Resp. Br. at 38–39. This position largely relies on *Alexander*, in which the Fourth Circuit assumed Congress allowed amounts to be charged if "expressly authorized by the agreement creating the debt" because consumers could then choose another lender if they did not like that term. 23 F.4th

at 378. It then assumed that, because "consumers have no say in choosing their debt collectors," Congress would not have allowed debt collectors and consumers to later contract for the same amounts. *Id.* And to be clear, these *were* assumptions: *Alexander* never cites any text or legislative history for its inferences. Nevertheless, Glover and Booze urge adoption of *Alexander*'s reasoning. *See* Resp. Br. at 36.

But the motives *Alexander* assumes are not the most plausible. There are logical reasons to require fees incidental to the debt to be "expressly authorized" when the original loan agreement is the source of permission to charge a fee. For example, contracts can contain implied terms. *See* CFPB & FTC Br. at 20. By requiring that a fee be "expressly authorized" if the source of permission is the agreement creating the debt, Congress ensured that the permission could not be implicit in *that* agreement even if implicit terms were otherwise "permitted by law." *See Nguyen v. United States*, 556 F.3d 1244, 1253 (11th Cir. 2009) ("[A] specific statutory provision trumps a general one."). Agreements creating debts are often complex, so requiring this issue be expressly addressed ensures the consumer has actual notice of the fee. As *Alexander* suggests, such notice would empower consumers in their choice of lender. Thus, the specificity of this exception is neither futile nor superfluous even if other contracts are permitted.

On the other hand, *Alexander*'s assumption that Congress *also* wanted to prevent later contracts between consumers and servicers for separate services is an anti-consumer leap. While consumers may not choose their servicer, they do choose how to pay their mortgage. Because a convenience fee is incurred only when the borrower chooses to use certain payment methods, these fees are not imposed as the servicer "see[s] fit." *Alexander*, 23 F.4th at 378. It is the consumer's choice, and there is no reason to infer Congress intended to foreclose that choice. Indeed, if Congress intended to prevent all subsequent agreements for charges between borrowers and debt collectors, it could easily have included a provision that expressly prohibits such contracts.

But instead of limiting a consumer's contract rights, Congress chose to use the broad phrase "permitted by law."[6] This has allowed borrowers and servicers to adapt to changing laws and technologies. For example, when Congress enacted the FDCPA in 1978, no member of Congress could have contemplated yet-to-exist

---

[6] The CFPB and FTC argue that Ocwen has misinterpreted the FTC's guidance as allowing a separate agreement for a fee and that the fee-related sign at a merchant is only an indication that the agreement creating the debt itself need not be in writing. *See* CFPB & FTC Br. at 23 n.8. This explanation makes little sense, as a sign regarding fees for dishonored checks could not be the "agreement creating the debt" but could well be an agreement about the "amount" (*i.e.*, the fee). Ocwen also notes that it did address the Commentary's discussion about "permitted by law." *See* Blue Br. at 28.

online payment methods; the same may be true of the underlying mortgage agreements for borrowers who have long held their mortgages, which often have thirty-year terms. The notion that the borrower should be prevented from purchasing newer payment methods on an optional basis is not consistent with any purpose that Congress articulated in passing the FDCPA.

Glover and Booze imagine a parade of horribles that will occur if a debtor can directly contract with its servicer to pay for a service: charges for accepting payment by mail, communicating with an attorney, providing evidence of the debt, and removing an error on a credit report. *See* Resp. Br. at 39–40. But these are not services similar to the one provided here. Charges for payments by mail are not possible because the contract expressly specifies payment by mail as a method the servicer must accept. And everything else Glover and Booze list is also something either the loan agreement or applicable law already requires the servicer to do. A servicer would not be able to contract with a borrower to perform such services for a price as there would be no consideration for the new fee. Therefore, there is no risk that allowing voluntary contracts for new optional services in exchange for a disclosed fee will somehow result in the types of fees imagined.

**IV.** **Convenience fees support a valuable consumer service that the FDCPA is not intended to restrain.**

Ocwen relies on its principal brief and the *amicus curiae* brief of the Mortgage Bankers Association to discuss the policy concerns regarding the District Court's decision. To be clear, this argument is not new on appeal, and Ocwen did not rely on facts outside of the record in advancing this argument. *See, e.g.*, *Glover*, R-77-5–R-77-5-10, ¶¶ 4, 8–10, 13, 22, 27 & *Booze*, R-68-5–R-68-5-10, ¶¶ 4, 9–11, 14, 23, 28 (discussing optional nature of fee, frequency of use, and costs to Ocwen). It is, however, customary and appropriate to discuss policy concerns in greater depth in this Court given its power to create precedent.

## CONCLUSION

The District Court erred in granting judgment in favor of Glover and Booze. Ocwen's convenience fees are not a debt or incidental to a debt and thus are not prohibited. Further, convenience fees are not collected or a means of collecting a debt, so the FDCPA does not regulate these charges. Finally, convenience fees are "permitted by law." For these reasons, voluntary convenience payments do not violate the FDCPA. The judgments should be reversed.

Respectfully submitted,


_____ */s/ Kimberly M. Ingram-Hogan* _____
Kimberly M. Ingram-Hogan

Attorney for Appellee
Ocwen Loan Servicing, LLC

**OF COUNSEL:**

Michael R. Pennington
BRADLEY ARANT BOULT CUMMINGS LLP
1819 5th Avenue North
Birmingham, Alabama 35203
(205) 521-8391
mpennington@bradley.com

Scott Burnett Smith
BRADLEY ARANT BOULT CUMMINGS LLP
200 Clinton Avenue West, Suite 900
Huntsville, Alabama 35801
(256) 517-5198
ssmith@bradley.com

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(g) of the Federal Rules of Appellate Procedure, the undersigned counsel certifies that this brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure. This brief contains 6,482 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and 11th Circuit Rule 32-4.

This brief complies with the typeface requirements of Rule 32(a)(5) of the Federal Rules of Appellate Procedure and the type style requirements of Rule 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman, font size 14.

*/s/ Kimberly M. Ingram-Hogan*
OF COUNSEL

**CERTIFICATE OF SERVICE**

I hereby certify that on April 2, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:


James L. Kauffman
Leslie A. Brueckner
Bailey & Glasser LLP
1055 Thomas Jefferson St NW
Suite 540
Washington, DC 20007

Young Kim
Consumer Law Attorneys
2727 Ulmerton Road
Suite 270
Clearwater, FL 33762

Glenn E. Chappell
Kristen G. Simplicio
TYCKO & ZAVAREEI LLP
2000 Pennsylvania Ave NW
Suite 1010
Washington, D.C. 20006
Tel: (202) 973-0900
Fax: (202) 973-0950

*/s/ Kimberly M. Ingram-Hogan*
OF COUNSEL